[No. 15319.  Department Two.—June 16, 1894.]

JOHN HACKETT, APPELLANT, *v.* THE STATE OF
CALIFORNIA, RESPONDENT.

CONTRACT FOR CONSTRUCTION OF SEAWALL—FURNISHING OF MATERIALS
—ESTIMATES OF ENGINEER.—Where the board of harbor commissioners
contracted for the construction of a seawall of a definite length, for
which they agreed to pay a fixed price per ton for stone, and a fixed
price per cubic yard for the earth used for the construction of it, the
fact that estimates of the quantities required for the work, as made by
the engineer, are stated in the notice, bid, and specifications, does not
require that they buy or pay for a fixed and definite number of tons and
cubic yards of the materials so estimated, regardless of whether used in
the work or not, but they are only under obligation to pay for the
materials actually used in the work.

ID.—EXTENT OF ERROR IN ESTIMATE IMMATERIAL.—The extent of error
in the estimate of the quantity of stone required is immaterial, and
cannot affect the construction to be given to the contract for the work,
which the contractor was bound to fulfill, whether it required more or
less than the quantity of materials estimated.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco.

The facts are stated in the opinion.

*Sullivan & Sullivan,* for Appellant.

*Garber, Boalt & Bishop, George A. Johnson,* and *Dennis
Spencer,* for Respondent.

HAYNES, C.—This action was brought in the superior
court of the city and county of San Francisco against
the state of California, by John Hackett, as assignee of
W. D. English and the Pacific Coast Dredging and
Reclamation Company, pursuant to a statute enacted
March 15, 1889, authorizing such suit to be brought.
(Stats. 1889, p. 221.)   Defendant's demurrer to the com-
plaint was sustained, and the plaintiff declining to
amend, judgment was entered for defendant, and the
plaintiff appeals therefrom.

The contract out of which this controversy arose was
made by W. D. English with the board of state harbor

commissioners, on February 20, 1884, for the construction of section five of the seawall and thoroughfare and wharf along the water-front line of the city and county of San Francisco. This contract was made by English for the Pacific Coast Dredging and Reclamation Company, a corporation, and on January 2, 1889, the corporation assigned the contract to plaintiff. The point of plaintiff's contention is that by said contract the contractor agreed to furnish, and the state agreed to pay for, 216,000 tons of stone at 52 cents per ton, and 285,-000 cubic yards of earth at 29 cents per cubic yard; that the contractor was ready and willing, and offered to furnish the full quantities of stone and earth above named, but that the board would only accept 119,025 $\frac{86}{100}$ tons of stone and 272,499 $\frac{2}{10}$ cubic yards of earth. The difference between these quantities, estimated at the prices named, amounts to $55,000, and this amount plaintiff seeks to recover in this action.

Respondent contends that the contract was for the construction of the seawall of a definite length, according to the specifications; that the quantities of stone and earth mentioned in the specifications and in the notice to contractors were mere estimates of the quantities which would be required to complete the work; that the contract required the board to take and pay for only so much of these materials as were necessary to complete the work and were actually used therein, the complaint alleging that the work was fully performed, and that the engineer overestimated the quantity of stone required by 96,774 tons, and the quantity of earth by 12,501 cubic yards; it being for these quantities of stone and earth so overestimated, and not used, or necessary to be used, that plaintiff seeks to recover.

The complaint sets out in full the notice to contractors, under which bids were received, and also the contract and the specifications of the work to be done, and the materials to be used, which are made part of the contract.

The notice was for proposals to construct a section of

the seawall, thoroughfare, and wharf, the seawall and thoroughfare to extend from the southerly end of section four, 1,000 feet southerly, and to have a surface width of 200 feet, the work to consist of a stone embankment, the character and dimensions of which are described, and to construct this, the notice stated, "it is estimated by the chief engineer of the board that it will take 216,000 tons of rock." The earth embankment to be the same length. "Its width on top, 12 feet above the mean of low low-tide, will be 139 feet; its width on the bottom (estimated) 165 feet; its average width 152 feet, and its average depth (estimated) 51 feet, 6 inches."

No question is made in regard to the wharf.

Under the head of "general conditions," the notice specified, among other things, that "the work will not be accepted until the stone and earth embankments shall have been brought to grade and maintained thereat for a period of three months. . . . . The whole of the material to be furnished and work to be done as required by the plans and specifications, to which special reference is hereby made. . . . . The contract for the whole work will be let to one party, but each bidder must state: 1. The price per ton of 2,240 pounds, for which he will furnish and place the stone required for the stone embankment. The price per ton, multiplied into 216,000, the estimated number of tons required, will give the amount of his bid on the stone embankment; 2. The price per cubic yard, to be determined in the vehicle of transportation, for which he will furnish the material and build the earth embankment. The price per cubic yard, multiplied into 285,000, the estimated number of cubic yards of material required, . . . . will give the amount of the bid on the earth embankment; 3. The sum for which he will furnish the material and build the wharf. The sum of these three bids, thus ascertained, will constitute the bid for the whole work. The contract will be awarded to the bidder, the aggregate of whose bid, determined as above, is the lowest."

The bid of Mr. English, under which the contract was awarded, is as follows:

"SAN FRANCISCO, February 20, 1884.
" To the Board of State Harbor Commissioners,

" GENTLEMEN: The undersigned hereby propose and agree to construct the work described in the annexed advertisement, according to the plans and specifications on file in your office, and within the time prescribed in the said advertisement, at the following rates:

" The stone embankment, at 52 cents per
 ton of 2,240 pounds, 52 x 216,000... .$112,320 00
" The earth embankment, at 29 cents per
 cubic yard (determined in the vehicle
 of transportation),——x 285,000......  82,650 00
" The wharf (furnishing the material and
 doing the work), for................  29,000 00
  " Total........................$223,970 00"

The contract contained, among others, the following provisions:

" That the party of the second part hereby covenants and agrees with the party of the first part to furnish the labor and materials, and do the following work, to wit: The construction of section five of the seawall and thoroughfare and wharf along the water-front line of the city and county of San Francisco, state of California. . . . .

"And the party of the first part covenants and agrees with the party of the second party to pay for the said work, by drafts drawn on the San Francisco Harbor Improvement Fund, in gold and silver coin of the United States, in manner following, viz: Upon monthly estimates of the value of the materials used and the work performed to the extent of seventy-five per cent of such values, said estimates to be made in writing by the chief engineer of the board, and the final payment of twenty-five per cent when the work is completed and accepted by the board at the following rates, viz: The stone embankment, at fifty-two (52) cents per ton of

two thousand two hundred and forty (2,240) pounds; the earth embankment, at twenty-nine (29) cents per cubic yard (determined in the vehicle of transportation); the wharf (furnishing the materials and doing the work), twenty-nine thousand ($29,000) dollars."

The material parts of the specifications affecting the question at issue follow closely the notice to contractors in the particulars above noticed. One or two extracts, however, may be pertinently made.

"The work to be done under these specifications consists in *furnishing all materials* and *erecting* a *stone* embankment, an *earth* embankment, and a *wharf.*

"The stone embankment will contain about 216,000 tons of stone; the earth embankment about 285,000 cubic yards of broken stone, sand, or other suitable material; and the wharf will contain 501,320 feet board measure of timber, and 802 piles, together with the requisite quantity of cast-iron mooring-bits, wrought-iron spikes, bolts, etc.

"The quantity of stone used in the stone embankment will be determined by weight.

"A ton is 2,240 pounds. The board will erect the necessary scales, and the weighing will be done under the direction of the chief engineer. The contractor must give every facility for the thorough and accurate determination of the quantity of stone used."

I think the court below did not err in sustaining the demurrer to the complaint, and rendering judgment for the defendant.

What the board of harbor commissioners contracted for was the construction of a section of the seawall of a defined length, and for which they agreed to pay a fixed price per ton for the stone, and a fixed price per cubic yard for the earth *used* in the construction of it, and not that they agreed to buy or pay for a fixed and definite number of tons and cubic yards of material, whether used in the work or not. If the "estimates" of the quantities required for the work, as made by the engineer and stated in the notice, bid, and specifications,

be laid aside or disregarded, there could be no question as to the correctness of our conclusion. On the other hand, if the notice, bid, and specifications had been for furnishing and putting in place 216,000 tons of stone, and 285,000 cubic yards of earth in a seawall, under the direction of the engineer, there could be no question that the contractor would have been required to furnish those quantities of material, and that the board should have paid therefor if such contract was within their powers. In such case, however, no estimates were necessary. Estimates became necessary only because the work to be done was restricted to definite and precise limits, the amount of material for which was difficult, or, indeed, incapable of exact computation.

This is apparent from the notice under which the bid was made, where it is stated that the average depth from the top of the embankment to hard bottom is (omitting inches) 61 feet, to stiff mud 39 feet, and average thickness of stiff mud 21 feet. "The average height of the embankment, as estimated by the chief engineer, will be 55 feet 4 inches." It is further provided that the contractor shall keep the stone embankment up to grade for three months. These facts contemplate a settling of the wall, but the extent of such settling is an uncertain quantity, and one that is continuous from the commencement of the work to its completion, and necessitates the provision for weighing the rock as it was used. Besides, it is not like solid masonry of given dimensions, which can be measured by the perch. The greater part of it is under water, and, to a certain height, the stone is simply "dumped" in and allowed to form a natural slope, which introduces another element of uncertainty. Still another unknown quantity is involved in the estimation. The rock is not estimated by bulk, but by weight. All that is required by the specifications is that it shall be rock that will not disintegrate by the action of the water; and it is a matter of common knowledge that different kinds of

rock vary greatly in weight. The lighter the rock the less number of tons are required, and *vice versa*.

Similar considerations affect the estimate of the quantity of earth required for the earth embankment. This was to be measured in the vehicle of transportation in its loose state. How much of bulk it would lose in place by settling would depend on the material used and the weight of the embankment, and could not, therefore, be accurately calculated.

These considerations were apparent and open to the bidder. He saw precisely what work the state wished to accomplish, and must have known that the quantities of material necessary for its accomplishment were not and could not be accurately determined, and, therefore, that it was essential that his bid should specify the price per ton and cubic yard, as otherwise a bid of a lump sum for each of the embankments would have been all that could be required. Besides, the clause in the contract relating to payments was not that one hundred and twelve thousand three hundred and twenty dollars would·be paid for the stone, nor eighty-two thousand six hundred and fifty dollars for the earth, but the stone embankment was to be paid for at fifty-two cents per ton, and the earth at twenty-nine cents per cubic yard; seventy-five per cent of the value of the materials *used* and work performed to be paid upon estimates monthly, and the final payment of twenty-five per cent when the work should be completed and accepted, thus clearly limiting the payments to the work and materials used.

The authorities cited by appellant do not conflict with this view. In *Cabot* v. *Winsor*, 1 Allen, 546, the contract was for the sale of five hundred bundles, more or less, of gunnybags, at ten cents per bag. The court, in construing the contract, as affected by the words "more or less," said:

"As applied to quantity, they are to be construed as qualifying a representation or statement of an absolute or definite amount, so that neither party to a contract

can avoid it or set it aside by reason of any deficiency
or surplus, occasioned by no fraud or want of good
faith, if there is a reasonable approximation to the
quantities specifically named as a subject of the con-
tract, . . . . or, as it is sometimes briefly expressed, it
is an absolute contract for a specific quantity within a
reasonable limit."

The case of *Hardy* v. *United States,* 9 Ct. of Cl. 224,
was for the transportation of a given number of tons,
"more or less," of government stores to certain mili-
tary stations, and a similar construction was given.

In neither of these cases was the quantity limited in
any manner, except by the words "more or less," while
in this case the quantity of rock and earth was capable
of exact ascertainment upon the completion of the
work, which was itself precisely defined.

Another case, cited by appellant, illustrates this dis-
tinction. That is the case of *Brawley* v. *United States,*
11 Ct. of Cl. 522, where the court quoted with approval
both of the cases above cited, and said:

"In each of these cases which we have cited it will
be seen that the contract was for a definite quantity,
that the words more or less added thereto, *without refer-
ence to any other method of determining and making cer-
tain what appeared to be rendered uncertain by the latter
words.* To give force to the words 'more or less' in such
connection, to the full extent of their literal meaning,
would be to allow either party practically to avoid the
whole contract, except as to the price of the goods
actually delivered and accepted. This would clearly
be an unreasonable construction, and not in accordance
with the plain intent of the parties."

In the case last above cited, however, the quantity
specifically mentioned was immediately followed by the
words "more or less, as shall be determined by the post
commander"; and the court held that the specified
quantity was subject to his control, and that both
parties agreed thereto by adopting that language. So,
in the case at bar, the controlling words of the contract

are that the contractor will "furnish the materials and do the following work, to wit: The construction of section five of the seawall and thoroughfare and wharf"; and that the quantities named are only estimates of the material required for that work, the requirements of the work being the ultimate and controlling measure of the quantity.

Whilst an accurate computation of the amount or quantity of material required could not be made in advance of the work, so gross an error in the estimate of the quantity of stone required is incomprehensible. But the extent of the error does not affect the construction we have given to the contract. It is not true, as argued by appellant, that under this contract the contractor could have been compelled to furnish the estimated quantity of stone and earth, unless qualified by the further statement that the whole of such estimates were required for the erection of the section of the seawall embraced in his contract. That contract he was bound to fulfill, whether it required more or less than the quantity of materials estimated, but for all that he used he would have received compensation at the contract rates.

Other points are urged with much force by appellant, but, in view of the conclusion reached as to the construction of the contract, it is not necessary to consider them, since if they were all determined in appellant's favor the result would not be changed.

The judgment appealed from should be affirmed.

SEARLS, C., and BELCHER, C., concurred.

For the reasons given in the foregoing opinion, the judgment appealed from is affirmed.

HARRISON, J., GAROUTTE, J., VAN FLEET, J.