THE CITY OF CHICAGO *et al.*

*v.*

HOMER B. GALPIN *et al.*

*Opinion filed December 21, 1899.*

183    399
|200    ¹553

1. MUNICIPAL CORPORATIONS—*contract which does not fix amount of liability from its date does not create present indebtedness.*   A contract by a municipal corporation which, when properly construed, does not fix the amount of the liability from its date does not create a present indebtedness, within the meaning of the constitutional restriction on municipal indebtedness.

2. CONTRACTS—*when use of words "more or less" does not render quantity uncertain.*   The use of the qualifying words "more or less" in a contract, where the quantity of the articles called for is material, is only for the purpose of guarding against avoiding the contract in case of accidental and trifling variation from the specified number.

3. SAME—*when contract fixes amount of liability from its date.*   A contract under which a specified number, more or less, of street lamps are to be furnished and kept lighted for a city, payments to be made at the end of each month at a specified price for each lamp lighted, no claims for lamps not lighted to be allowed unless at once reported by the city in a certain manner, fixes the amount of the city's liability from the date of the contract, and payment thereunder may be enjoined by a tax-payer where the city is indebted beyond the constitutional limit.   (*City of Chicago* v. *McDonald,* 176 Ill. 404, followed.)

CARTWRIGHT, C. J., and PHILLIPS and CARTER, JJ., dissenting.

APPEAL from the Superior Court of Cook county; the Hon. HENRY V. FREEMAN, Judge, presiding.

CHARLES S. THORNTON, Corporation Counsel, and
GRANVILLE W. BROWNING, for appellants:

By the contracts involved in this case the city in-
curred no indebtedness, within the meaning of the con-
stitutional inhibition contained in section 12 of article 9.
*East St. Louis* v. *Gas Light Co.* 98 Ill. 415; *Carlyle Water Co.*
v. *Carlyle,* 31 Ill. App. 339; *Carlyle* v. *Carlyle Water Co.* 140
Ill. 445; *Decatur Gas Light Co.* v. *Decatur,* 120 id. 67; 24 Ill.
App. 544; *East St. Louis Gas Light Co.* v. *East St. Louis,* 45
id. 591; *Bull* v. *Quincy,* 155 Ill. 566; *East St. Louis* v. *Flan-
nigan,* 36 Ill. App. 50; *Hay* v. *Springfield,* 64 id. 671; *Rail-
way Co.* v. *Jacksonville,* 114 Ill. 562.

To the same effect are the decisions in at least thir-
teen States having similar constitutional provisions to
our own.   *Dively* v. *Cedar Falls,* 27 Iowa, 232; *Valparaiso*
v. *Gardner,* 97 Ind. 1; *Grant* v. *Davenport,* 36 Iowa, 203; *In-
dianapolis* v. *Wann,* 144 Ind. 183; *Saleno* v. *Neosho,* 127 Mo.
627; *Raton Water-Works* v. *Raton,* 49 Pac. Rep. 907; *McBean*
v. *Fresno,* 112 Cal. 159; *Electric Co.* v. *Reading,* 175 Pa. St.
107; *Black* v. *Chester,* 175 id. 101; *Reuting* v. *Titusville,* 175
id. 512; *Smith* v. *Denham,* 144 Mass. 177; *Utica Water Co.* v.
*Utica,* 31 Hun, 426; *Weston* v. *Syracuse,* 17 N. Y. 110; 1 Dil-
lon on Mun. Corp. (4th ed.) p. 205, sec. 136a; *Railway Co.* v.
*Merrill,* 80 Wis. 358.

The contracts in question are avoidable by the city,
and not void.   They are reasonable, in the interest of the
city and the tax-payer, and can be canceled by notice at
any time.   *East St. Louis* v. *Gas Light Co.* 98 Ill. 415; 19 Ill.
App. 44; *Decatur Gas Light Co.* v. *Decatur,* 120 Ill. 67; *Car-
lyle Water Co.* v. *Carlyle,* 31 Ill. App. 339; *East St. Louis Gas
Light Co.* v. *East St. Louis,* 47 Ill. App. 411; *Indianapolis* v.
*Wann,* 144 Ind. 178; *McBean* v. *Fresno,* 112 Cal. 159; *Law*
v. *People,* 87 Ill. 355.

If in any year during the life of the contracts the city
council fails to include in the annual appropriation ordi-
nance provision to pay for services and supplies under
these contracts, that omission will terminate them; and

no recovery can be had for such services and supplies thereafter rendered and furnished.    *Prince* v. *Quincy,* 128 Ill. 443; *Railway Co.* v. *Jacksonville,* 114 id. 567.

These continuing contracts running for more than one year do not tie up the legislative discretion of subsequent city councils, and for that reason are not void.    They are valid so long as they are recognized by the city and so long as appropriations are annually made for them.    Subsequent city councils have the right to terminate them at any time by serving notice or by refusing to appropriate for them, and consequently they are not void, but voidable only.    *East St. Louis case,* 98 Ill. 427; *Carlyle case,* 31 Ill. App. 339;  140 Ill. 445.

COLLINS & FLETCHER, for appellees:

The city of Chicago can make no contract and incur no expense unless an appropriation shall have previously been made concerning such expense.    Const. art. 9, sec. 12; Hurd's Stat. chap. 24, art. 7, secs. 1-4; *Railway Co.* v. *Chicago,* 148 Ill. 141; *McElhinney* v. *Superior,* 32 Neb. 744; *Chicago* v. *Shepard,* 8 Ill. App. 602; *Chicago* v. *Lithographing Co.* 6 id. 563; *Kiichli* v. *Minneapolis,* 58 Minn. 418; *Smith Canal Co.* v. *Denver,* 20 Col. 84; *Indianapolis* v. *Wann,* 144 Ind. 175; *Niles City Water-Works* v. *Niles,* 59 Mich. 311; *Culbertson* v. *Fulton,* 127 Ill. 36; 9 Am. & Eng. Ency. of Law, 909; *Prince* v. *Quincy,* 128 Ill. 443; 105 id. 138, 215; *Springfield* v. *Edwards,* 84 id. 632; *Oleson* v. *Wilson,* 52 Pac. Rep. 372; *Lewis* v. *Lynch,* 61 Ill. App. 477; *Beard* v. *Hopkinsville,* 95 Ky. 239; *Spillman* v. *Parkersville,* 35 W. Va. 605.

The contracts in question are null and void and the court properly enjoined their execution.    *Railway Co.* v. *Chicago,* 148 Ill. 141; *Chicago* v. *Shepard,* 8 Ill. App. 602; *McElhinney* v. *Superior,* 32 Neb. 744; *Chicago* v. *Lithographing Co.* 6 Ill. App. 560; *Kiichli* v. *Minneapolis,* 58 Minn. 418; *Smith Canal Co.* v. *Denver,* 20 Col. 84; *Prince* v. *Quincy,* 128 Ill. 344; *Niles City Water-Works* v. *Niles,* 59 Mich. 311; *Gold* v. *Peoria,* 65 Ill. App. 602; *Indianapolis* v. *Wann,* 144 Ind. 175.

Per CURIAM: This was a bill for injunction, in the superior court of Cook county, by the appellees, Homer B. Galpin and others, as tax-payers in the city of Chicago, praying for a writ restraining the city and its mayor and comptroller from awarding or executing certain contracts with the American Development Company for furnishing gasoline lights in the outer districts of the city, and to restrain the defendants from paying any money under the contracts, if already executed.

The two contracts set up in the bill were entered into September 22, 1897. One was for "2800 lamps (more or less) to be operated and lighted by said party of the second part, * * * each of said lamps to be lit every night in each month and to be kept lit from dusk until dawn, * * * the price to be paid the party of the second part to be at the rate of eleven dollars and forty-eight cents ($11.48) per annum for each and every lamp lighted, payments to be made monthly, all claims for lamps not lighted to be reported by party of the first part to the party of the second part at once, giving date, location, hour, and by whom reported, otherwise no claim for lamps not lighted to be allowed. * * * And said first party further agrees to pay said party of the second part for the lighting of said lamps and the operating thereof, according to the terms of the foregoing agreement. * * * It is hereby understood and agreed by and between the parties hereto that this agreement shall take effect on and from the first day of October, 1897, and shall continue in force and effect for a period of one year from and after such date: *Provided, however,* that if the said party of the second part shall desire to continue this contract in force and effect for the further period of one year, beginning on the first day of October, 1898, upon the same terms and conditions as provided for herein, said party of the second part shall have the privilege of so doing, upon its giving at least thirty days' notice in writing before the first day of October, 1898, to the party

of the first part, of its intention and desire to so continue this agreement in force and effect another year." The other was for the lighting, etc., of 7000 lamps, the agreement to take effect and be in force on and from the first day of April, 1898, and to continue in force for one year, with the privilege to continue it for another, upon like notice as in the former contract.

Two grounds for the injunction are set up and relied upon in the bill: First, that no provision in the annual appropriation for the year 1897 for street lighting was made for more than one year; and second, because the contracts incurred a municipal indebtedness beyond the constitutional limit,—alleging that the city had already reached the limit of such indebtedness. On a hearing of the cause the temporary injunction theretofore issued was made perpetual, to reverse which decree the city prosecutes this appeal.

It is contended in the argument on behalf of appellees that the city comptroller had no authority to enter into the contracts, but that that duty devolved, under the city ordinances, upon the commissioner of public works alone. The principal answer to this contention is, that on the 28th day of February, 1898, several months after the making of the contracts, the city council passed an ordinance ratifying and confirming the action of the mayor and comptroller in making the contracts, and confirming the same. This ordinance seems to have been regularly enacted, and for the purposes of this opinion may be treated as a ratification of the contracts, and removing any objection to the formalities by which they were entered into.

On the other question,—that is, whether or not, by the terms of these contracts, the city incurred an indebtedness beyond the constitutional limit,—counsel for the city contend that no indebtedness, within the meaning of the constitutional inhibition, (art. 9, sec. 12,) was created. They say: "The contracts in question are voidable by the

city, and not void. They are reasonably in the interest of the city and the tax-payer, and can be canceled by notice at any time." And again: "If, in any year during the life of the contracts, the city council fails to include in the annual appropriation ordinance provision to pay for services and supplies under these contracts, that omission will terminate them, and no recovery can be had for such services and supplies thereafter rendered and furnished." We scarcely think the learned counsel intend to be understood as urging these propositions literally as stated. We are at a loss to perceive how it can be said that these contracts are legal and binding upon the contractor but may be repudiated by the city at its option, and we assume that the real defense is, "that no indebtedness whatever was created by the execution of the contracts, because they are continuing contracts, providing for monthly payments of so much as shall be found to be due at the end of the month for lamps actually in use during that month."

The cases in this State chiefly relied upon in support of this proposition are *City of East St. Louis* v. *East St. Louis Gas Light and Coke Co.* 98 Ill. 415, *Carlyle Water, Light and Power Co.* v. *City of Carlyle*, 31 Ill. App. 325, and *City of Carlyle* v. *Carlyle Water, Light and Power Co.* 140 Ill. 445. We had occasion in the recent case of *City of Chicago* v. *McDonald*, 176 Ill. 404, to reconsider those cases, in connection with others upon the same subject, and reached the conclusion that they did not sustain the contention there made in support of the validity of the contracts sought to be enjoined, and if these contracts are construed as fixing the amount to be paid by the city at the end of each month the decision in that case is decisive of this,—that is to say, if these contracts, by their terms, had definitely stated that the contractors were to light, in the one case 2800 lamps and in the other 7000, and maintain them, to be paid for at the rate of $11.48 per annum, the amount to be paid monthly, the *McDonald*

*case* would control the decision here. There, the only contingency or uncertainty as to whether or not the city would be liable to pay at the end of a month was that which might arise from the failure of the contractors to perform the contract, the amount to be paid being definitely ascertained and fixed by the terms of the agreements when they were entered into, whereas here the question fairly arises whether the amount is not unascertained, to be determined at the end of each month by the number of lamps actually lighted.

By the language of these contracts the lamps to be lighted are in the one case 2800 *more or less* and in the other 7000 *more or less.* For lamps not lighted reports must be made by the city to the contractor, giving date, location, hour, and by whom reported, else no claim for lamps not lighted was to be allowed. Payments were to be made at the rate named "for each and every lamp lighted by the party of the second part as aforesaid, said payments to be made monthly." If this language is construed literally, although the contractor might perform the terms and conditions on its part, and so put the city in a position to be compelled to pay something at the end of a month, still the amount of such liability could only be ascertained at the end of the month, when the number of lamps lighted during that time could be known.

*First*—If so construed, would the contracts still be within the constitutional inhibition? The city being indebted at the time beyond the constitutional limit, it may be said that becoming liable for *any* amount in the future, whether that amount was definitely ascertained at the date of the contract or not, would be incurring an indebtedness, *in some manner for some purpose*, "to an amount, including indebtedness, in the aggregate exceeding five per centum on the valuation of the taxable property therein," etc. The question in all the cases arising under constitutional and statutory provisions like that in our constitution of 1870 is, whether or not the contract cre-

ates a present indebtedness, within the meaning of the constitution or statute. Notwithstanding the conflict in the authorities on this question, it is said, and we think fully sustained by the authorities, "the better opinion is that the word 'indebtedness' is not used in these prohibitions, or in any of them, in any special or limited sense. The word is to be given its fair and legitimate meaning, and not restricted to obligations in the form of bonds and other written evidences of indebtedness." (Note to *Beard* v. *City of Hopkinsville*, 44 Am. St. Rep. 230, citing and quoting at length from *Lake County* v. *Rollins*, 130 U. S. 662.) It is said in the same note, citing *Thompson-Houston Electric Co.* v. *Newton*, 42 Fed. Rep. 723: "The time when the indebtedness must be taken into consideration is when the liability is incurred. We do not mean when payment becomes due, but when the municipality assumes the liability, so that it has no discretion to withdraw therefrom. Though when the steps were taken to authorize the indebtedness the city was already indebted to the full constitutional limit, yet if this indebtedness is subsequently discharged, so that before the bonds or other evidences of indebtedness in question are issued, they, added to the remaining unpaid indebtedness, do not exceed the constitutional limit, they are valid." It is said in the same note, which is an extended consideration and citation of authorities upon this subject: "To render a statute or ordinance void, as creating a prohibited indebtedness, it must appear that such indebtedness must necessarily arise without any further action on the part of the municipality. Hence, if it merely be given the privilege at some future time to purchase certain property, but is not placed under obligation to do so, the purchase price is not to be assumed as a part of the municipal indebtedness until the city has, by its election, obligated itself to make the purchase."

It is not necessary, in view of what we have said in the *McDonald case*, to say more as to when the indebtedness

is incurred in contracts for purchasing light or water for a number of years, to be paid for in specified sums each year or at the end of each month.   It is, however, true, that the conflict in the authorities on this subject seems to be largely confined to contracts of this class, and, we think, arises in many, if not all, of the cases from a disregard of the important consideration whether or not the municipality had passed the constitutional limit at the time the contract was entered into, or whether it had not yet been reached, and the sum to be paid at the end of each period, monthly or yearly, could be added to the pre-existing indebtedness without exceeding the limit, although the aggregate sum contracted for, added to such indebtedness, would do so.   (See note above cited, page 239, and cases.)

It can readily be seen that a contract which leaves the amount to be paid to be ascertained at the end of a month or year cannot in all cases be treated as creating an indebtedness, at the time the contract is entered into, violative of these limitations.   Suppose in this case the city had not yet reached the limit of indebtedness, but the complainants had contended that the liability created by these contracts would carry it beyond that limit.   In that case, if the contracts left the amount uncertain and undetermined, the conclusive answer to the contention would be, whether or not the amount, when ascertained, added to the indebtedness already incurred, will exceed the constitutional limit cannot be ascertained until the end of the month, when the lamps lighted and maintained are counted.   We are inclined to the view that if the contracts, properly construed, do not fix the amount of the liability from their dates they should not be held to create an indebtedness, within the meaning of the constitution.   If it be said some indebtedness would arise, though the amount is undetermined, the answer would be, a fixed sum is as necessary to the creation of an indebtedness by contract, in the common acceptation of the

term "indebtedness," as other requisites of the contract. A debt, or "indebtedness," means a determinate and definite liability.

*Second*—Are these contracts fairly susceptible of the construction that they leave the amount of the monthly payments indefinite or uncertain? In the first contract the agreement on the part of the contractor is to light and maintain, every night, 2800 lamps, for which the city agrees to pay at the rate of $11.48, etc. The words "more or less," when applied to quantity or numbers in contracts of sale, if the agreement is to furnish goods identified by reference to independent circumstances, such as an entire lot deposited in a certain warehouse or all that may be manufactured by the vendor in a certain establishment, etc., apply to the specific lot, and the naming of the quantity is not regarded as in the nature of a warranty, but only as an estimate of the probable amount, in reference to which good faith is all that is required of the party making it. "But when no such independent circumstances are referred to, and the engagement is to furnish goods of a certain quality or character to a certain amount, the quantity specified is material, and governs the contract. The addition of the qualifying words 'about,' 'more or less,' and the like, in such cases, is only for the purpose of providing against accidental variations arising from slight and unimportant excesses or deficiencies in number, measure or weight." (1 Beach on Modern Law of Contracts, sec. 245, p. 305.) "The words 'more or less' have a plain, ordinary and popular signification, and are often used in contracts relating both to real and personal estate. As applied to quantity, they are to be construed as qualifying a representation or statement of an absolute and definite amount, so that neither party to a contract can avoid it or set it aside by reason of any deficiency or surplus occasioned by no fraud or want of good faith, if there is a reasonable approximation to the quantity specifically stipulated in the

contract.  *  *  *  It is sometimes briefly expressed to be 'an absolute contract for a specified quantity within a reasonable limit.' What is a reasonable limit and a substantial compliance with such a contract, if the facts are not in dispute between the parties, is a question of law for the determination of the court." (Ibid. sec. 83, p. 108.) In *Tilden* v. *Rosenthal*, 41 Ill. 385, which arose upon a contract for the sale of cattle, the sale was of a herd containing 262 head more or less, and it was held that an offer to deliver 178 head was not in compliance with the contract, and we said: "We understand the phrase 'more or less' as having been used by the parties to cover such trifling deficiencies in number, as might be caused by the ordinary casualties of death or loss." These authorities are in point here.

We also think the contracts show upon their face that the parties contemplated the lighting of and payment for the definite number of lamps, 2800 or 7000, simply recognizing by the use of the words "more or less" the probable result that one or more of the lamps, for one or more nights during a month, might not be lighted, and the agreement on the part of the city in effect is, to pay for the whole number of lamps at the rate of $11.48 per annum, at the end of each month, simply taking credit upon that amount for lamps not lighted, if any, of which the required notice had been given.

Our conclusion therefore is, that this contract, properly construed, is not materially different from the contracts under consideration in the *McDonald case*, and that for the reasons there given the decree of the superior court was properly entered. It will accordingly be affirmed.

*Decree affirmed.*

CARTWRIGHT, C. J., and PHILLIPS and CARTER, JJ., dissenting.