### VANDERBILT v. OCEAN S. S. CO.

(Circuit Court of Appeals, Second Circuit. July 18, 1914.)

No. 263.

1. EVIDENCE (§ 407*)—BILLS OF LADING—PAROL EVIDENCE TO VARY OR CONTRADICT.

A bill of lading has a twofold character. It is a contract to transport and deliver the goods to the consignee on the terms specified in it; and it is also a receipt as to the quantity and description of the goods shipped. So far as it embodies the terms of the contract it is not to be varied by parol evidence; but so far as it constitutes a receipt it may be contradicted as between the parties by parol evidence showing that a different quantity was delivered.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1826–1828, 1841; Dec. Dig. § 407.*]

2. SHIPPING (§ 106*)—FREIGHT—BILL OF LADING AS EVIDENCE OF QUANTITY.

In a bill of lading for a cargo of lumber, the words "weight unknown" and "weight subject to correction," in addition to the words "said to contain 26,304 superficial feet more or less," will prevent the application of the rule that the recital as to quantity prima facie binds the ship;

and such bill of lading does not afford evidence of the quantity, but leaves the question open

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 175-178, 204; Dec. Dig. § 106.*]

3. CUSTOMS AND USAGES (§ 19*)—EVIDENCE OF EXISTENCE.

Evidence *held* to establish a general custom as well as a custom between the parties to allow a shipper a 10 per cent. deduction for wastage resulting from the dressing of rough lumber, and to entitle a shipper to such deduction on a shipment from Savannah to New York.

[Ed. Note.—For other cases, see Customs and Usages, Cent. Dig. §§ 41-43, 45, 46; Dec. Dig. § 19.*]

4. SHIPPING (§ 115*)—BREACH OF CONTRACT OF AFFREIGHTMENT—DAMAGES.

Libelant shipped on respondent's vessel a cargo of lumber from Savannah to New York, and paid the freight lawfully due thereon. Respondent, refusing to allow the usual deduction for wastage on a portion of the cargo which was dressed before shipment, retained a portion of the cargo, which had been sold by libelant. *Held*, that libelant was entitled to purchase lumber in the open market to make up the deficiency and to recover the cost thereof from respondent.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. § 185; Dec. Dig. § 115.*]

5. CARRIERS (§§ 91, 94*)—BREACH OF CONTRACT—FAILURE TO DELIVER GOODS—DAMAGES.

The act of a carrier in failing without lawful excuse to deliver goods intrusted to his care constitutes both a breach of contract and a conversion, and the measure of the shipper's damages is the value of the property at the time of the conversion, with interest thereafter.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 338-355, 367-395, 456; Dec. Dig. §§ 91, 94.*]

Appeal from the District Court of the United States for the Southern District of New York.

This suit comes here on appeal from a final decree in favor of the libelant, entered in the District Court for the Southern District of New York, October 27, 1913, awarding the sum of $257.42 to the libelant.

Barry, Wainwright, Thatcher & Symmers, of New York City (James K. Symmers and Earle Farwell, both of New York City, of counsel), for appellant.

Edward L. Owen, of New York City, for appellee.

Before COXE and ROGERS, Circuit Judges, and HAND, District Judge.

ROGERS, Circuit Judge. The question we have to determine in this suit is the amount of freight to be paid upon a certain shipment of lumber. The libelant shipped at Savannah, Ga., on board the steamer City of Atlanta, belonging to respondent, a certain amount of lumber to be transported to New York. His claim is that the amount so shipped was 26,304 feet; the amount of dressed lumber being 17,369 feet, and the number of feet of rough lumber being 8,935 feet. The freight agreed to be paid was as follows: On lumber 45 feet in length, $6.25 per thousand, and an additional $2.50 for all lumber over 45 feet; $25 was to be added for a minimum charge of lighterage and 30 cents a

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

thousand feet for wharfage. Upon the arrival of the lumber at New York the libelant sent a check to the respondent for $197.29 in payment of the freight. The respondent, thinking an error had been made in computing the freight, telegraphed its agent in Savannah requesting him to telegraph the amount of freight due. The report made by him did not agree with the statement furnished by the libelant. The respondent thereupon caused the shipment to be measured, and, as a result, found that the amount of lumber was 28,336 feet board measure. The libelant refused to pay freight upon this basis, and respondent, exercising its right of lien for unpaid freight, refused to deliver the undelivered portion of the shipment, and held it subject to payment of the full amount of freight. The libelant claimed that he should be required to pay on only 26,304 feet. Instead of paying under protest, he bought in the open market sufficient lumber to complete the amount of the consignment at a cost of $141.80. The sum claimed in the libel as damages is the cost of this last purchase.

Three separate measurements of the lumber appear to have been made; one by the shippers, as shown by the invoice, with a total of 28,234 feet; one by the lumber inspector of the respondent with a total of 28,236 feet; and one by the lumber inspector of the libelant with the total of 28,336 feet. The three measurements closely correspond; there being a difference of but 102 feet between the largest and smallest measurement. The foregoing figures are based on rough dimensions, and the dispute as to the amount of freight due arises out of the claim of the libelant that he is entitled under an alleged custom of the trade to deduct from these measurements 10 per centum of the board measure of all lumber that had been dressed at Savannah. If that deduction is to be allowed, then the amount upon which freight is to be charged as appears from the specifications of the shipment is 26,304 feet. The bill of lading stated the amount shipped as "said to contain 26,304 feet."

[1]. A bill of lading has a twofold character. It is a contract to transport and deliver the goods to the consignee upon the terms specified in it; and it is also a receipt as to the quantity and description of the goods shipped. So far as it embodies the terms of the contract, it is not to be varied by parol evidence. So far as it constitutes a receipt it is like other receipts, subject to be contradicted or explained by proof as to the facts. The courts appear to have agreed without dissent that recitals in a bill of lading as to the quantity of goods received may be contradicted as between the parties by parol evidence showing that a different quantity was delivered. As a receipt, it is open to rectification or explanation by parol evidence. The Willie D. Sandhoval (D. C.) 92 Fed. 286; Kelley v. Bowker, 11 Gray (Mass.) 428, 71 Am. Dec. 725; Relyea v. New Haven Rolling Mill Co., 42 Conn. 579; Abbe v. Eaton, 51 N. Y. 410. A carrier is not therefore conclusively bound by the statement contained in a bill of lading as to the quantity of lumber received. The court below stated that "the bill of lading prima facie binds the ship and its owner." And no doubt that ordinarily is the case. The Franklin, 8 Wall. 329, 19 L. Ed. 455; The Delaware, 14 Wall. 601, 20 L. Ed. 779.

[2] The respondent claims that the bill of lading in the case at bar is not prima facie evidence as to the amount shipped, because of the language used in describing the article shipped: "Said to contain 26,-304 superficial feet *more or less.*" The meaning of the words "more or less" depends upon the connection in which they are used. As used in a contract relating to personalty, and as applied to quantity, they have been often construed as qualifying a representation or statement of an absolute or definite amount, so that neither party can avoid it or set it aside by reason of any deficiency or excess if there is a fair approximation to the quantity specifically stipulated in the contract. City of Chicago v. Galpin, 183 Ill. 399, 55 N. E. 731; Cabot v. Winsor, 83 Mass. (1 Allen) 546, 550; Hackett v. State; 103 Cal. 144, 37 Pac. 156. In Kelley v. Bowker, 77 Mass. (11 Gray) 428, 71 Am. Dec. 725, where the words "more or less" were used in a bill of lading reciting a shipment of, and agreeing to deliver, 2,282 bushels of corn more or less, the court held that the words indicated an intention on the part of the carrier not to be bound in strictness by the number of bushels mentioned, and that the contract was complied with by delivering 2,217 bushels, if no more was shipped. In The Dixie (D. C.) 46 Fed. 403 the words "more or less" in a bill of lading reciting the receipt of 400 piles signed by the carrier as per charter party was construed to operate to prevent the carrier from being liable for a shortage of 90 piles, although the bill of lading had been transferred for value. It may be that the use of the words "more or less" will not, when taken alone, prevent the application of the rule that if the carrier claims that the goods shipped are in excess of the amount specified in the bill of lading the burden rests on him to prove it. But, however that may be, a bill of lading may contain other expressions which will prevent the application of the rule that the recital as to quantity prima facie binds the ship or its owner. Thus in The Ismaele (D. C.) 14 Fed. 491 (1882), the bill of lading stated the number of tons of iron specifically, but there was also stamped on it "weight unknown." The court said that such a bill of lading did not afford evidence of the quantity of iron shipped. And in Henderson v. 300 Tons of Iron Ore (D. C.) 38 Fed. 36, 39, Judge Addison Brown said:

"Under the clause 'weight unknown,' the statement of '300 tons,' in the bill of lading, was not even prima facie evidence as to the weight against the ship, when it appeared that all received was delivered."

In the bill of lading in the case at bar the words "weight unknown" and "weight subject to correction," in addition to the words "said to contain 26,304 superficial feet more or less," will prevent the application of the rule that the recital as to quantity prima facie binds the ship. We do not think that such a bill of lading affords evidence of the quantity of lumber shipped. It leaves the question open.

[3] But there does not seem to be any dispute as to the number of feet of lumber which the carrier transported. The fact is that before the shipment took place the libelant had 28,234 feet of undressed lumber. Of this amount he dressed 19,299 feet, and, allowing 10 per cent. for wastage in the dressing, he had dressed lumber to the amount of 17,369 feet. This left him with 8,935 feet of undressed lumber, or a

total of 26,304 feet, which was the exact amount delivered to the respondent and the amount receipted for in the bill of lading. Was there any error in deducting this 10 per cent?

Libelant testified that respondent had always allowed him on previous shipments the 10 per cent. deduction, and he had shipped at different times 800,000 feet. There is not in the record any testimony which contradicts him in that particular. He testified also that the custom of the trade "all over" was to allow 10 per. cent. for wastage in dressing lumber. The witness Parke, whose business it was to inspect lumber, after stating that a deduction of 10 per cent. was allowed on dressed lumber, and that it was a customary deduction was asked: "Was that the custom at the time you speak of with respect to lumber carried by other steamship companies?" To which he replied: "Yes, sir; deductions were made on dressed lumber by every one to my knowledge." Again he was asked: "An average of 10 per cent.?" To which he answered: "Yes; on dressed." The witness McDonough, who had had extensive experience in the shipment of lumber, testified that the figures stated in the bill of lading gave "the net amount of feet shipped after deducting *the usual allowance for dressing.*"

The respondent's own witness Cunningham admitted that a deduction was made on dressed lumber. He was asked: "In charging freight have you ever heard of a custom of deducting 10 per cent. for dressed lumber?" To which he said: "I have always found that it is deducted according to the actual size; different sizes."

The evidence shows that the amount of the shipment of lumber was as stated in the bill of lading, and that libelant paid the full freight and charges according to the bill of lading. He was therefore entitled to full delivery of the shipment as per the bill of lading. For the failure to make such delivery respondent is liable to pay the market value of such lumber at the time its delivery was withheld.

[4] Respondent withheld the lumber from the libelant because the latter declined to pay freight on wastage resulting from the dressing of rough lumber, which lumber was dressed in Savannah before shipment. The wastage was left in that city. It has not been made plain to us why, as this wastage was never transported from Savannah to New York, the respondent should be permitted to charge for what was never carried. If any such right exists, we think the burden rests on the carrier to prove it, rather than on the shipper to disprove it. And the testimony has not satisfied us that any such right exists.

The respondent contends that, if it was in error in not making full delivery of all the lumber to the respondent, the latter was at fault in the course he adopted. The respondent withheld 3,545 feet of the lumber. To make good the deficiency the libelant went into the open market and bought that number of feet, paying for the same $141.80. This he did because the party to whom the libelant had sold the entire shipment demanded full delivery of the same. The respondent, relying upon the principle that whenever a breach of contract occurs it is the duty of the one injured by the breach to mitigate his damages as far as he is reasonably able to do so, insists that libelant should not have gone into the market and purchased the lumber he needed to make good the deficiency, but that he should have paid under protest the amount of

freight demanded and subsequently brought suit to recover back the excess; that if he did not see fit to adopt that course he should have brought an action in trover or replevin.

[5] The act of a carrier in failing to deliver without lawful excuse goods intrusted to his care constitutes both a breach of contract and also a conversion; and where property has been wrongfully converted to the use of another, the measure of damages has been usually held to be the value of the property at the time of the conversion together, with interest from the date of the detention. 13 Cyc. 170; Hutchinson on Carriers (3d Ed.) vol. 3, § 1374 (1906).

We think, therefore, that the court below was correct in allowing the libelant to recover in this suit, which has the effect of one for conversion, the amount he was obliged to pay in the open market to replace the lumber wrongfully withheld.

Decree affirmed.