## AKTIESELSKABET BRUUSGAARD v. STANDARD OIL CO. OF NEW JERSEY.

(Circuit Court of Appeals, Second Circuit. April 3, 1922.)

No. 259.

1. Shipping &⇒106—"Bill of lading" defined.

A "bill of lading" is a receipt for the goods shipped, signed by the person contracting to carry the goods or his agent, and stating the terms on which the goods were delivered to and received by the shipper.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Bill of Lading.]

2. Shipping &⇒106—Shipper entitled to bill of lading, but must secure it from authorized person.

While, both under the Harter Act (Comp. St. §§ 8029–8035) and long-established usage, a shipper has an absolute right to a bill of lading, he must secure it from a properly authorized person.

3. Shipping &⇒106, 149—Parties other than master not authorized to sign bill of lading.

Under a charter party not containing a provision requiring the master to sign bills of lading as demanded, without prejudice to the charter party, *held* that a loading agent for the charterer had no authority to issue a bill of lading or collect freight, and that the master was the only person who had authority to do so.

Appeal from the District Court of the United States for the Southern District of New York.

Libel in admiralty by the Aktieselskabet Bruusgaard against the Standard Oil Company of New Jersey. Decree for libelant (274 Fed. 996), and respondent appeals. Affirmed.

Libelant owned the Norwegian ship Maella, and had for agents in New York City the shipbroking firm of Benham & Boyesen. Through that firm it made a voyage charter of the Maella to the Pattengill Company; the voyage to be from a United States Atlantic port to Montevideo or Buenos Aires. Pattengill's charter engagement was to "provide a full and complete cargo." The rate of freight for said cargo was specifically provided for in the charter party, and that freight was to be "all prepaid without discount on signing bills of lading, and considered earned and irrevocable, vessel lost or not lost." The only other references to bills of lading in the charter are that the port of discharge is to be "as ordered on signing bills of lading," and that said cargo is to be "consigned on bills of lading to named receivers, and not to order."

Pattengill obtained the Maella at the request of the Caravel Steamship Lines, a concern whose president was one Schoultz, and it was the Caravel Company, and not Pattengill, that sought cargo wherewith to load the ship. Respondent Standard Oil Company had certain goods which it desired to send to Buenos Aires, whereupon a freight broker effected an arrangement between respondent and Caravel Company whereby the later engaged (in substance) to send respondent's cargo to its destination on the Maella, and in this contract the freight broker (doubtless at the suggestion of an agent or officer of Caravel Company) described said company as "agent" of the Maella.

The cargo was delivered to the ship, and the shipper respondent presented

with a bill of lading bearing the heading "The Caravel Steamship Lines, Inc.," and concluding with the usual phrase, "In witness whereof the master or agent of said vessel hath signed three bills of lading. * * * Dated at New York this 11th day of June, 1919. By Arthur V. Schoultz." (Schoultz's signature is at the foot of the bill; the date is filled in in typewriting; the rest of the quoted phrase is a printed form.)

The loading of the ship was delayed; the master, through the owner's agents, Benham & Boyesen, began to demand demurrage of Pattengill; none was forthcoming, and rumors reached the master that bills of lading were being issued by Caravel Company, whereupon the master served notice on all shippers that he was to sign bills of lading, and asserting a lien upon cargo for all freight and demurrage. When this notice was given Schoultz had already delivered to respondent the bill of lading above described and had collected the freight in advance, which freight he neither paid over to Pattengill nor to the ship. But of the fact that Schoultz had issued said bill of lading and collected the freight neither the master nor the owner's agent, Benham, had any knowledge until some days later. When the full extent of Schoultz's operation became known, the master notified the shippers a second time, advising them in substance that any bill of lading issued by Caravel Company was without authority, and demanding freight as per charter party. It was finally agreed in respect of the Standard Oil Company's shipment that it should go forward, and (in substance) that this suit should be brought to recover the reasonable freight charge thereon.

It follows that the question in this case is whether by virtue of the circumstances above narrated the Maella was bound to carry the cargo under the bill of lading issued by Caravel Company. The lower court held that the bill of lading signed by Schoultz was a nullity, and gave decree for the agreed reasonable freight. Respondent appealed.

Charles R. Hickox, of New York City, for appellant.

John W. Griffin and Haight, Smith, Griffin & Deming, all of New York City, for appellee.

Before HOUGH, MANTON, and MAYER, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). At trial effort was made to prove that what Schoultz did generally and what he particularly did in the matter of collecting the freight money was in accordance with custom. Such custom was neither pleaded, nor was any usage proved; therefore it drops out of the case, and we express no opinion as to whether the usage would be lawful, had it been proven.

[1, 2] A bill of lading is both a receipt and a contract. Vanderbilt v. Ocean Co., 215 Fed. 886, 132 C. C. A. 226. It is a receipt for the goods shipped on board a ship, signed by the person who contracts to carry them or his agent, and stating the terms on which the goods were delivered to and received by the ship. Scrutton, Charter Parties, pp. 7, 139. While a shipper has an absolute right to demand a bill of lading, both under the Harter Act (Comp. St. §§ 8029–8035) and by virtue of long-established usage (Watt v. A Cargo of Lumber, 161 Fed. 104, 88 C. C. A. 268), he must get it from a properly authorized person, and who that person is will depend upon the facts shown in each particular instance.

[3] The charter party at bar does not contain the proviso common in time charters that the master must sign bills of lading as demanded without prejudice to the charter party. Therefore, since Benham & Boyesen, as local agents for owners, have asserted no rights in the

premises, no one in the port of New York had any authority under this charter to sign bills of lading, except the master, and it is proven that he never delegated this authority nor sought so to do.

Caravel Company was not the charterer, nor did it have authority, even from the charterer, to attempt that which was actually done. In our opinion, the facts of this case dispose of it entirely. The piece of paper upon which respondent unfortunately parted with its money was a fraud, not even issued or created within the apparent authority of any one concerned in its creation.

The decree below is affirmed, with interest and costs.