ROBERT R. RHODES et al., Appellants, *v.* DANIEL E. NEWHALL, Respondent.

Plaintiffs, as carriers, executed and delivered to the consignor bills of lading, acknowledging the receipt on board their vessel of a specified quantity of wheat to be transported to B. and there delivered to defendant, the agent of the consignor, subject to charges. The wheat was weighed into the vessel under the supervision and control of the carriers. The bills each contained this clause: "All the deficiency in cargo to be paid by the carrier and deducted from the freight, and any excess in the cargo to be paid for to the carrier by the consignee." Plaintiffs delivered

827 bushels less than the quantity specified in the bills of lading.   In an action to recover the stipulated freight, plaintiffs gave evidence tending to show that they delivered all of the wheat that they received.   *Held,* that the value of the deficiency was properly deducted; that plaintiffs were estopped from questioning the correctness of their acknowledgment and were bound to account for the precise quantity admitted.

*Ellis* v. *Willard* (9 N. Y. 529); *Meyer* v. *Peck* (28 id. 590); *Abbe* v. *Eaton* (51 id. 410), distinguished.

(Argued April 24, 1891; decided June 2, 1891.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made January 23, 1891, which affirmed a judgment in favor of plaintiffs entered upon the report of a referee.

*Benjamin H. Williams* for appellants.   The defendant, as consignee, having received the wheat under the bills of lading subject to the freight and charges, is liable for the freight. (Abb. on Shipping, 421; *Merian* v. *Funck,* 4 Den. 110; *Abbe* v. *Eaton,* 51 N. Y. 415.)   The duty of the carrier is performed when he delivers all the property received, and when this is done there is no deficiency in cargo to be paid for.   (*Abbe* v. *Eaton,* 51 N. Y. 410; *Myer* v. *Peck,* 28 id. 590; *Law* v. *Bottsford,* 26 Fed. Rep. 651; *Ford* v. *Head,* 34 Hun, 146; *I. M. R. Co.* v. *Knight,* 122 U. S. 87; *Price* v. *Hartshorn,* 41 N. Y. 44; *Grant* v. *Norway,* 10 C. B. 665.)   LaSalle and Wolvin had authority to sign bills of lading for property received for transportation.   This authority did not give them power to bind the owners of the vessel by giving a bill of lading for goods not received on board of the vessel, nor to sign an agreement to pay for goods not so received.   A bill of lading, so far as it bound the owner for goods not received, would be void in the hands of a transferee in good faith. (*Pollard* v. *Vinton,* 105 U. S. 7; *The Freeman,* 18 How. [U. S.] 182; *Law* v. *Botsford,* 26 Fed. Rep. 651; *Friedlander* v. *T. P. R. Co.,* 130 U. S. 416.)   The referee finds that " the value of the grain actually delivered was at least $6,319.79, over and above any and all advances theretofore

made by such consignee on account thereof." It is claimed that the doctrine of estoppel will, in any event, only afford him protection to the extent of the moneys he had advanced, and, it appearing that the grain was of sufficient value to reimburse him and to pay the freight, he cannot invoke that doctrine to enable him to obtain further security to the prejudice of the plaintiffs' claim. (*Hills* v. *Varet*, 3 N. Y. Leg. Obs. 105 ; *Merrill* v. *Tyler*, 2 Seld. 47 ; *Payne* v. *Burnham*, 62 N. Y. 69 ; 13 Alb. L. J. 441.)

*George J. Sicard* for respondent. The bills of lading issued and received by the defendant, are conclusive upon the plaintiffs as to the statement of the quantity of grain on board the propeller. (*Ellis* v. *Willard*, 9 N. Y. 529 ; *Griswold* v. *Haven*, 25 id. 595, 601 ; *N. Y. & N. H. R. R. Co.* v. *Schuyler*, 34 id. 73 ; *Armour* v. *M. C. R. R. Co.*, 65 id. 111 ; *Batavia Bank* v. *N. Y., L. E. & W. R. R. Co.*, 33 Hun, 594 ; 106 N. Y. 195 ; *N. R. Bank* v. *Aymar*, 3 Hill, 262 ; *Byrne* v. *Weeks*, 4 Abb. Ct. App. Dec. 657 ; *Dickerson* v. *Seelye*, 12 Barb. 99 ; *Barnard* v. *Campbell*, 55 N. Y. 456 ; *F. & M. Bank* v. *E. R. R. Co.*, 72 id. 188 ; *Merrick* v. *Wheat*, 3 Fed. Rep. 340 ; *Brooke* v. *N. Y., L. E. & W. R. R. Co.*, 32 Alb. L. J. 374 ; *S. C. & P. R. R. Co.* v. *Bank*, 10 Neb. 566 ; *Bank* v. *A. etc., R. R. Co.*, 20 Kans. 519 ; *Reila* v. *R. R. Co.*, 42 Conn. 579.)

RUGER, Ch. J. This action was brought by a carrier to recover from the consignee the freight on a cargo of wheat, transported from Duluth to Buffalo and deliverable to the defendant there on payment of the freight and charges.

It is not disputed but that the plaintiffs executed and delivered to the consignor bills of lading, acknowledging the receipt on board their vessel, of fifty-four thousand bushels of wheat at Duluth, to be transported to Buffalo and there delivered to the defendant, subject to a charge of three and three-fourths of a cent per bushel, for freight ; and containing the further provision that "all the deficiency in cargo to be paid by the

carrier, and deducted from the freight, and any excess in the cargo to be paid for to the carrier by the consignee."

It is conceded by the answer that the carrier delivered at Buffalo to the consignee but fifty-three thousand, one hundred and seventy-three bushels of wheat; being eight hundred and twenty-seven bushels less than the quantity specified in the bill of lading; and $712\frac{41}{100}$ less in value; and the question in controversy is, whether the consignee was entitled to deduct this sum from the gross amount of freight earned by the vessel.

The plaintiffs gave evidence tending to show that they delivered all of the wheat at Buffalo which they received on board at Duluth. The trial court deducted the value of the deficiency from the stipulated freight on the 54,000 bushels and rendered judgment for the balance; and the General Term has affirmed its judgment.

We think that the cause was correctly disposed of in the courts below. The plaintiffs seek to avoid the effect of the stipulation in the contract, fixing the quantity of wheat received by them at Duluth, by reference to the cases holding that an acknowledgment in a bill of lading specifying the quantity of merchandise received by them, operates as a receipt only and is subject to correction by proof that such merchandise was not in fact received, citing *Ellis* v. *Willard* (9 N. Y. 529); *Abbe* v. *Eaton* 51 id. 410); *Meyer* v. *Peck* (28 id. 590), and other similar cases. The rule acted upon in those cases, as stated in the head note of *Meyer* v. *Peck*, is that "an *ordinary* bill of lading is not conclusive, as between the original parties, either as to the shipment of goods, or the quantity; as to those matters it operates merely as a receipt and is open to explanation on the trial by parol evidence." We feel no disposition to question the authority of these cases, or to disregard the principle there laid down; but think that this case is distinguishable in its facts, from those considered in the cases referred to.

Here the parties have provided by express language for the particular contingency arising under this contract, and we can evade its operation only by disregarding one of the most

imperative rules in the interpretation of contracts. A primary rule of construction requires a contract to be so construed as to give some meaning and effect to all of its language, and if the words used can have an operation which leads to no absurd results, and is not contrary to some provision of law, that meaning must be adopted, rather than one which would render the language meaningless and inoperative.

The provisions fixing the quantity of grain received and providing a mode by which any deficiency or excess in quantity shall be dealt with, do not seem susceptible of any other effect than to prescribe a rule by which the consignee can determine the amount of freight and charges payable by him to the carrier. For this purpose the provision has a legitimate and natural office to perform, which also accords with the plain signification of the language used.

It seems reasonable that parties should agree upon the quantity of grain shipped when it is designed for transportation to distant markets with a view of avoiding controversies between carrier and consignee upon the subject. The cargo was here weighed into the vessel under the supervision and control of the carriers, and they had every opportunity to learn the quantity of grain actually received by them. They thereupon entered into a contract with the consignor whereby it was agreed that any deficiency in the cargo should be paid for by them, and deducted from the freight, and any excess in quantity should be paid to them by the consignee. The deficiency and excess referred to could have related only to a variation from the quantity specified in the bills of lading, as there was no other standard furnished by which a variation could be estimated. This was a contract which the parties were competent to make and a consideration for the promise to pay for any deficiency was secured by the right to collect the value of any excess. These were mutual obligations and were obviously incurred for the purpose of avoiding disputes over the quantity actually received by the carrier, and to estop him from disputing the correctness of his acknowledgement. The parties plainly contemplated the contingency of a variance in the course of trans-

portation between the quanty of grain admitted to have been received by them and that subsequently delivered, and provided in express terms the mode by which their respective rights should be adjusted in that event. The language of the contract is plain and unambiguous, and the right of the parties to make it is indisputable.

Judge DENIO said, in *Meyer* v. *Peck* (*supra*) : " No doubt it might be made a matter of express contract that the carrier should account for the precise quantity acknowledged in the instrument, and that no other evidence on that point should be received." (See *Lishman* v. *Christie*, L. R. (19 Q. B. Div.) 333.)

This, we think, they have done by the contract in question. The consignee in this case is but the agent of the consignor and is authorized to pay only such freight as is provided for by the bill of lading. He can hold the property only for such advances as the bill of lading directs him to make, and there is no principle upon which he can be made liable for any greater amount than that called for by the letter of his authority to pay.

We have not considered the cases treating of the doctrine of estoppel, as it is unnecessary, in the view we take of the case, to invoke that principle.

The judgment should be affirmed.

All concur.

Judgment affirmed.