THE WILLIE D. SANDHOVAL.

(District Court, E. D. New York. February 28, 1899.)

1. CARRIERS—NONDELIVERY—GOODS NOT RECEIVED—LIABILITY.
   The mere fact that goods were receipted for by the carrier's agent, who had no knowledge of their delivery, except a slip signed by the boatman, will not create liability for their nondelivery, where they were not in fact delivered to the carrier.

2. BILL OF LADING—RECEIPT—CONTRADICTION—ESTOPPEL.
   A bill of lading acknowledging receipt of goods for transportation is not conclusive as to the amount of goods delivered to the carrier, and does not estop it from showing that the goods were not in fact received.

3. SAME—BURDEN OF PROOF—EVIDENCE.
   While the burden is on a carrier to show that goods receipted for were not in fact received, yet where, in an action for their nondelivery, there

was no evidence that a particular lot of sugar in barrels was actually loaded on a vessel, and no part of the lot was on board at the first port, and the evidence was inconsistent with the theory that it was lost or stolen, the carrier will not be liable.

Hyland & Zabriskie, for libelant.
Carpenter, Park & Symmers, for claimant.

THOMAS, District Judge. On the 15th day of July, 1897, one Sandhoval, owner of a canal boat of the same name, was employed by the libelant to carry a cargo of sugar, and distribute the same at Utica and Syracuse. Thereupon the boat went to the factory of the American Sugar-Refining Company, on the East river, and took on a cargo of sugar, which was weighed by that company's men, and, as supposed, carried to the dock, tallied, and loaded by such men. Thereupon one Potter, a young man employed to work on the Sandhoval, signed a receipt for the sugar, although he had not tallied it, and knew nothing about the truth of the statements contained in the receipt, but relied upon the statement of the sugar company's workmen. The claimant was on the boat at the time, but was sick, and not attentive to the loading. Thereupon the boat was taken to the libelant's dock, Pier 7, East river, whereupon the claimant gave the slip so signed by the boatman to the libelant, and received a bill of lading corresponding to the contents thereof. The receipt and bill showed, among other items of cargo, 30 barrels of sugar, consigned to Head, of Utica, in two lots,—one of 20 barrels, and one of 10 barrels. When the sugar arrived at Utica the lot of 10 barrels could not be found, although the consignee's men searched for the same; and, if it was loaded at the sugar refinery, it must have disappeared between New York and Utica. The barrels of sugar were in the hold, and could be lifted therefrom only with a tackle, or, if otherwise, with difficulty; and, if the sugar had been disposed of before the arrival of the boat at Utica, the two young men then in the employ of the claimant, and who on the trial testified with some alacrity against him, should have known the fact. If the sugar were loaded, the burden of explaining its nondelivery is on the carrier; but, if not loaded, the mere fact that it was receipted for in the manner above described would not create liability. It is certain that the bill of lading, under the explanation given, is no actual evidence of the fact of loading, save as the law raises a presumption of such fact. The bill is founded upon the receipt, and the receipt, in view of the evidence given, has only the probative force mentioned, as there is no pretense that the person signing it had the slightest knowledge of the truth of its statements. There is no evidence that the sugar was actually loaded, beyond the evidence that it was weighed, and in due course should have been removed to the dock, tallied, and put aboard. It is true that, when the captain went to get the sugar, it was his duty to know what he received; and when he went back to Walsh, the shipper, and delivered to him a receipt showing that 30 barrels of sugar had been loaded, Walsh was justified, until the contrary appeared, in relying upon the statement. Hence there rests upon the carrier the burden of showing that the sugar was not.

loaded. Has he fulfilled this burden? The carrier states that it was not on his boat when he got to Utica. He denies any diversion of it. Is that sufficient proof that it was not loaded. Did thieves take it out in the night? How much easier to have taken the sacks, of which there were several hundred in the vessel! And, moreover, the difficulty of lifting the barrels from the hold without detection causes the court to doubt such an occurrence. No freight was delivered before the arrival of the boat at Utica. It apparently was not aboard at that time. It is not believed that the carrier abstracted the barrels. What would it have availed him to steal 10 barrels of sugar, for which, as a common carrier, he was liable? The error was probably at the sugar refinery's docks.

An examination of the evidence, aside from the receipt given by Potter, does not show that this particular sugar was loaded, although it does show that it was ordered of the sugar-refinery company; and the figures indorsed on the order, which are said to be those of the weighing master, indicate that it was weighed, and in due course of procedure it should have been carried out upon the dock, tallied, and placed aboard. But nobody is forthcoming to say that it was either weighed, carried on the dock, tallied, or loaded. Must the master go further than this, and show affirmatively that it was not loaded? For instance, assume that there was no evidence whatever of loading, beyond the shipping receipt and the bill of lading made therefrom, and the other evidence appeared tending to show that the sugar was not upon the boat when it reached Utica, and that the captain had not diverted it; must the captain, under the burden of proof which rests upon him, show that the sugar actually was not loaded at the sugar refinery? It must be kept in mind that there is no estoppel. In The Ethel, 59 Fed. 473, it was held that, in determining whether there is a shortage of cargo consisting of bags of sugar, both the consignee's output count and intake count, as shown by the bill of lading, are controlled, when the deficiency alleged is only three bags, by proof that the hatches were sealed after the sugar was in, and opened only by the port wardens on the vessel's arrival, and that there was no opportunity for loss or abstraction. In that case no port was touched from the time the vessel sailed until her arrival, and there was therefore no opportunity for the loss or abstraction of any part of the cargo. The court said, "I regard this testimony as more reliable than either of the counts made, and therefore accept it as conclusive." The libelant is apparently in error in his claim that the bill of lading is an estoppel. In Meyer v. Peck, 28 N. Y. 590, it was held that an ordinary bill of lading is not conclusive, as between the original parties, either as to the shipment of the goods named in it, or as to the quantity said to have been received, and any mistake or fraud in the shipment of the goods may be shown on the trial. The bill of lading in that case contained the stipulation that: "Any damage or deficiency in quantity, the consignee will deduct from the balance of freight due the captain." These words, it was held, did not affect the question, and were not a guaranty that the captain had received the whole quantity of goods specified, or an agreement to pay for that portion, if any, that should be found to be deficient of

what he has received. The interest of the bona fide holder of the bill of lading was not involved in that case. The authority of this decision upon the state of facts presented has not been modified. In Rhodes v. Newhall, 126 N. Y. 574, 27 N. E. 947, the court stated that there was no disposition to question the authority of the case, nor to disregard the principles there laid down. The last case was of a different character. There was a claim for deficiency in wheat. The wheat was weighed into the vessel under the supervision and control of carriers. The bill contained this clause: "All the deficiency in cargo to be paid by the carrier, and deducted from the freight, and any excess in the cargo to be paid for to the carrier by the consignee." It was held that the plaintiffs were by this clause estopped from questioning the correctness of their acknowledgment, and were bound to account for the precise quantity admitted. This decision rested upon the conclusion that the provisions fixed the quantity of grain received, and provided a mode by which any deficiency or excess in quantity should be dealt with, and that thereby the carrier would have the benefit of any excess, and would be responsible, without further specification, for any shortage. The same rule was adopted in Sawyer v. Mining Co., 16 C. C. A. 191, 69 Fed. 211, where the court expressly holds that the bill of lading is not in the ordinary form, probably because of the usual and ordinary variations in quantity, and that the stipulation inserted was intended to provide for an adjustment of such deficiency and excess without going back of the face of the bill. In Relyea v. Rolling-Mill Co., 75 Fed. 420, it was held by Judge Shipman that where a master, who is also owner, of a vessel, gives a shipper a bill of lading reciting receipt of a certain amount of iron, and agreement to deliver it to the consignees, he is liable for damages to the consignees, who, relying on the correctness of the recital, pay the shipper for more iron than was actually on board. There the principle of estoppel is properly invoked. In the case at bar there was no payment, before the discovery of the shortage, in reliance upon the bill of lading; nor was the libelant placed in a position which estopped him from denying that the sugar had been actually loaded. He had the same rights under the bill of lading, and was subject to the same obligations, as is the respondent in the present action. In The Asphodel, 53 Fed. 835, it was held by Judge Brown, of the Southern district of New York, that a ship does not guaranty that the amount of cargo recited in her bills of lading as received on board, and based on her tally, has been actually so shipped and received; nor can the vendor and vendee of such goods, by any private arrangement, make the ship an insurer of the correctness of her tally, as against fraud or mistake, for their benefit, and as a fulfillment of the vendor's contract, when not fulfilled in fact; and, where there is proof of fraud or mistake, the ship and owners cannot be held accountable to the consignee beyond the number actually received on board. The opinion of the learned judge in this case is useful. The only doubt in this case is whether the claimant has fulfilled the burden of proof by his evidence that he delivered all the freight he had, and that he did not deliver the 10 barrels at Utica because they were not on board. What more could

he do? If there were any evidence of actual loading, it would be different. But all the evidence tending to show actual loading is the order of the sugar-refinery company to its factory to deliver the sugar consigned to Head, and certain figures, stated to be the weigher's figures, indorsed thereon. It is also to be observed that the missing sugar is a single lot of 10 barrels, of a particular kind of sugar, from a larger number of barrels. It would be strange if, by some chance, a person taking it from the hold should secure the precise shipment from the general whole. The very fact that a specific lot is unaccounted for tends to strengthen the conclusion that it was not abstracted after loading. The court is convinced that the sugar was not loaded, and the receipt and bill of lading based thereon must yield to that conviction. Let a decree be entered accordingly.