### SMALL *v.* TRAVELERS PROTECTIVE ASSOCIATION.

An attempt to board a train of cars, running at eight or ten miles an hour, by a young, strong, and active man, with experience as a " traveling man " in boarding and alighting from moving cars, is an exposure to " obvious risk of injury," within the meaning of an accident-insurance policy which excepts the insurer from liability for injuries received as a result of " voluntary or unnecessary exposure to danger, or to obvious risk of injury," and, when made merely for the purpose of avoiding the delay incident to missing the train, will prevent a recovery against the insurer for injuries received in consequence of such attempt.

Argued October 12, — Decided November 14, 1903.

Action on insurance policy. Before Judge Hodges. City court of Macon. June 15, 1903.

*Hardeman, Davis, Turner & Jones*, for plaintiff.
*Roland Ellis* and *J. E. Hall*, for defendant.

FISH, P. J. Small brought an action against the Travelers Protective Association of America, upon a policy of accident-insurance which it had issued to him. A rule of the association, by which the plaintiff was bound, provided that the association should not be liable for injuries incurred by a member as the result of " voluntary or unnecessary exposure to danger, or to obvious risk

of injury." As to the circumstances under which the plaintiff received the injuries which were the foundation of his claim against the association, he testified, that at the time he was injured he was twenty-three years old, was in good health, strong and active; that he was a traveling man, and, during his experience as such, had become very efficient in mounting and dismounting from moving trains; that on the occasion in question he had placed his baggage on the train and had crossed the street to look after his trade, and when the time arrived for the train to leave he returned to take it, but just at that time a freight-train came in between him and the coach in which he had placed his baggage, and as the passenger-train started it was necessary for him, in order to catch it, to go around the freight-train; that he ran down the track beside the freight-train for about sixty yards, and, just as the freight-engine passed him, the passenger-train came by and he attempted to board it. He was then about seventy-five yards from the depot, the place he usually mounted the train, though he had often boarded the train at the place where he attempted to do so on this occasion. He testified that the ground was smooth at the place where he attempted to mount and there was a good crossing there; that the train was moving eight or ten miles an hour; that he had nothing in his hands; that he took the usual position of a man boarding a moving train, which was in accordance with his experience and observation; that, as the train came by, he caught the railing of the express and smoker, swung himself forward with the train, succeeded in getting one foot upon the step and slipped and fell off; that he did not know what caused him to slip; that the steps were from fifteen to twenty-four inches above the ground. He offered to prove that his habit and custom had always been to get off and on moving trains, and that every week, during his four years as a drummer, he had got on and off moving trains, not only every week, but every day in the week; that, from his experience in daily boarding moving trains, he could ordinarily board a train moving eight or ten miles an hour in perfect safety; and, from such experience, the proper way to board them was as he attempted to do on this occasion. The plaintiff also offered to prove, by three witnesses, that drummers, in the practice of their vocations, usually acquire much experience and become quite expert in boarding moving trains; that as drummers they had each acquired much

experience in boarding and dismounting moving trains, and that the plaintiff had acquired great expertness in successfully boarding moving trains ; that, from the experience of the witnesses and from their observation of the plaintiff, he, in attempting to board the train in question, at the place and under the speed it was going, was not unnecessarily exposing himself to danger or to obvious risk of injury ; that, considering the rate of speed of the train, the place, and the circumstances under which plaintiff attempted to mount it, "the attempt was not one of obvious danger to an experienced man in boarding and dismounting moving trains, when he was as active, and athletic, and expert as Mr. Small was." All of this evidence was rejected by the court.   It did not appear that any necessity or emergency existed for the plaintiff to board the moving train, but he attempted to do so merely to avoid the delay incident to missing that train.   At the conclusion of the evidence submitted in behalf of the plaintiff, the court granted a nonsuit.   The case is here upon the plaintiff's bill of exceptions, complaining of the exclusion of evidence and the grant of the nonsuit.

As will have been seen, the plaintiff had been permitted to testify, in effect, to what the excluded evidence, if admitted, would have tended to show ; and clearly it was not permissible for the offered witnesses to testify that the plaintiff, on the occasion in question, did not unnecessarily expose himself to danger or obvious risk of injury.   We will, however, consider the case as if the other portions of the rejected testimony had been admitted. This is the second appearance of the case before this court.   When here the first time (115 *Ga.* 455), Mr. Justice Cobb, in delivering the opinion of the court, said :   " Whether one who attempts to board a moving train is engaged in an act which is dangerous in its nature, or is an obvious risk of injury, depends upon the circumstances under which the act is attempted to be performed, the place at which the train is, the speed at which it is moving, the position of the party, his age and activity, and all other circumstances which would be considered in determining whether an ordinarily prudent person would, under such circumstances, attempt at such a time and in such a place to board a train moving at such rate of speed.   It is not necessarily what would be done by a particular individual under the circumstances stated, but what would

be done ordinarily by a man in the exercise of due care and caution. If a man of ordinary prudence would have attempted, under the circumstances, to board the train, then the attempt would not be negligence. If, on the other hand, a man of ordinary prudence would not have made the attempt, it would be negligence, and a person engaged in such an act would be exposing himself to danger or to obvious risk of injury, within the meaning of such terms when used in a policy of accident-insurance. See, in this connection, *Suber* v. *Railway Co.*, 96 *Ga.* 42; *Killian* v. *Railroad Co.*, 97 *Ga.* 732; *Coursey* v. *Railway Co.*, 113 *Ga.* 297." In view of the law thus announced as applicable to the case, the exception to the grant of the nonsuit presents the question whether or not it can be held, as matter of law, that a reasonably prudent man, under all the circumstances of the case, would not have attempted to board the train. In our opinion, a reasonably prudent man would not, under the circumstances, have attempted to board this train. An attempt to do so would necessarily amount to an exposure to an easily seen or understood mischance or harm. The hazard of such an attempt would be obvious. In *Travelers' Insurance Company* v. *Jones*, 80 *Ga.* 541, it was held: "During a dark and rainy night, for a person with two packages in his hands or arms to attempt, by choice, to pass over a trestle which he knows to be dangerous, other ways of travel being open to him, is, on his part, 'voluntary exposure to unnecessary danger, hazard, or perilous adventure,' notwithstanding this was his usual way of travel, his usual route to his home, and he had been going that way for ten years, and many others went the same way." In *Roul* v. *Railroad Co.*, 85 *Ga.* 197, a fireman undertook, upon the order of the engineer, to mount an engine which was running at the rate of six to twelve miles an hour, and was injured in so doing. He sued the railroad company for damages, and upon the trial of the case a nonsuit was granted, "because the act was so rash and dangerous that he was not obliged to obey such an order, and if he did so it would be at his peril," the present Chief Justice saying in the opinion: "It seems to us that any man of common sense would have known that it was a rash and dangerous attempt." In *Mayfield* v. *Railroad Co.*, 87 *Ga.* 374, the plaintiff undertook to mount the rim, one and a half inches broad, around the pilot of an engine while it was moving at the rate of four or five miles an

hour, and he fell, or was thrown off, and was hurt. In an action against the railroad company he was nonsuited, and this court said his attempt to mount the pilot of the engine "was clearly an act of negligence, if not gross negligence."

In Murphey *v.* Railroad Co., 43 Mo. App. 342, it was held that a boy fourteen or fifteen years of age, active and unincumbered with baggage, who, at the invitation of the conductor, attempted to board the caboose of a freight-train, where there were no obstructions in his way and when the train was running at the rate of six or eight miles an hour, was guilty, as a matter of law, of contributory negligence. In Heaton *v.* Railway Co., 65 Mo. App. 479, it appeared that the plaintiff was injured in attempting to board a steam-railroad train while it was passing a station on a descending grade, and traveling at a rate of speed variously estimated, but by no one at less than between six and seven miles an hour. He had been informed that it would not stop, and was told by the conductor to jump on. He was young and vigorous and had been a constant traveler on railroads; yet, acting on the impulse of the moment, he sprang on the train in opposition to, and not with, the direction in which it was moving. It was held that the plaintiff was, as a matter of law, guilty of contributory negligence. In Tuttle *v.* Insurance Co., 134 Mass. 175, the policy sued on provided that no claim should be made under it, " when death or injury may have happened in consequence of exposure to any obvious or unnecessary danger." It was held that no recovery could be had for the death of the insured, caused by being struck by a railroad train, while running on the track in front of it in the night-time, for the purpose of getting on a train approaching in an opposite direction on a parallel track. In Lovell *v.* Insurance Company, Q. B., 3 Ins. L. J. 877, it was held that walking on a railroad track in a dark and rainy night, at a time when the deceased knew that trains were frequently passing both ways, constituted " an obvious risk," within the meaning of an accident policy excepting the insurer from liability for injury or death arising from the insured " exposing himself to any obvious risk or danger ;" that it is not enough that the deceased did not actually see the train coming; that the danger was certain and ought to be present to the mind of a man of ordinary sense and prudence; that the words " obvious risk " designate not only a risk which

may be readily perceived by the eye or senses, but also one that may be perceived by the intellect. As in point, see Cornish *v.* Accident Insurance Co., 23 Q. B. D. 453, and Smith *v.* Preferred Mut. Acc. Assn. (Mich.), 62 N. W. 990. The nonsuit was properly granted. *Judgment affirmed. All the Justices concur.*