# CHARLESTON.

## COMBS v. COLONIAL CASUALTY CO.

Submitted January 6, 1914.   Decided January 14, 1914.

1. INSURANCE—*Accident Policy*—*"Obvious Risk."*

   A person who attempts to cross a railroad track immediately in front of a rapidly approaching train, and is run over and killed, exposes himself to an "obvious risk of injury or obvious danger," within the meaning of a condition in an accident insurance policy, limiting the liability of the insurer. (p. 474).

2. SAME—*Accident Policy*—*"Obvious Danger."*

   An obvious danger is one that is plain and apparent to a reasonably observant person, and the fact that insured may not have observed it and been conscious of it at the time of the fatal accident, is not material. He owed to the insurer, as well as to himself, the duty to be reasonably careful when in the presence of an obvious danger, and his failure to use reasonable care does not excuse him. (p. 475).

Error to Circuit Court, Raleigh County.

Action by M. J. Combs against the Colonial Casualty Company. Judgment for plaintiff, and defendant brings error.

*Reversed and Remanded.*

*Enslow, Fitzpatrick & Baker,* for plaintiff in error.

*W. H. Rardin, A. A. Lilly* and *J. W. Maxwell,* for defendant in error.

WILLIAMS, JUDGE:

George W. Combs was run over and instantly killed by an engine and train of cars while attempting to cross the tracks of the Chesapeake & Ohio Railway Company at a road crossing at Hoo Hoo in Raleigh county, on the 18th day of August, 1910. This action was brought by his wife against the Colonial Casualty Company on an accident policy issued by it to deceased, to recover $2,500, the amount of insurance agreed to be paid to her in case of the accidental death of insured. Defendant admitted its liability to pay $500 and tendered that sum at the trial, which plaintiff declined to accept, and waived payment of it into court. Defendant then filed three special pleas averring that certain conditions in the policy

had been violated, which it claims exonerated it from the payment of any more than the sum tendered. Upon the issues joined on the pleas judgment was rendered, on a demurrer to the evidence, in favor of plaintiff for full amount sued for; and defendant has brought the case here on writ of error.

One of the pleas avers that deceased met his death by exposure to an obvious risk or danger in carelessly and negligently attempting to cross the railroad track in front of an approaching engine, and that, in view thereof, according to an express stipulation of the contract of assurance, defendant was liable to pay only one-fifth of the amount which would otherwise be payable under the policy. It is expressly provided in the policy that, in the event of accident, fatal or otherwise, occurring under certain conditions the insurer's liability shall be limited to one-fifth of the amount which would be otherwise payable, one of which conditions is "exposure to obvious risk of injury or obvious danger," by the insured.

The case turns solely upon the question whether the insured violated this condition of the policy. Did he expose himself to an obvious risk of injury or obvious danger? H. P. Youell, the engineer in charge of the locomotive, was the only eye witness to the accident. He testified that, on the morning of the 18th of August, 1910, his engine ran over and killed a man whom he afterwards learned to be George W. Combs, at a public crossing near a little station called Hoo Hoo; and when he was about 250 yards east of the crossing he blew the whistle for the crossing, and then saw deceased walking on the track in front of the engine, going in the direction of the crossing and about 45 or 50 yards from it; that when the whistle sounded deceased stepped down off the track into a path that ran along parallel to the track, and continued his course toward the crossing; that when his engine approached within about 100 yards of the crossing he blew the whistle the second time, and saw deceased glance back over his shoulder toward the engine and then turn and continue his course along the path toward the crossing; that at that time, he thinks, deceased was about fifteen steps from the crossing; that when deceased reached the crossing he "just whirled and stepped right up on the track, like he was aiming to go across at the crossing." Witness was riding on the left side of his engine and deceased

was walking along the path on the same side of the track, and when deceased attempted to cross the track he was struck by the tender and knocked down and his body run over by the right wheels of the engine. Witness says that, after the body of deceased had passed out of his view in front of the tender, he saw his leg and foot slip up just before the engine hit him, but could not tell whether he was then in the act of jumping or falling. The crossing was ballasted with loose slag. The accident occurred in broad daylight, and there was nothing to obstruct deceased's view of the approaching train. Witness also says that deceased was walking along with his head bowed, and did not look up, or stop, before attempting to cross the track; and that the train was then running at the speed of about twelve or fifteen miles an hour. The railroad grade, at this point, he says, was practically level and there was nothing to obstruct the view of the engine, if deceased had looked toward it. The foregoing testimony is undisputed, and, from the facts thereby proven, the jury were bound to infer that deceased, who was not shown to be wanting in any of the natural senses and faculties, either knew, or was grossly negligent not to know, that the engine was dangerously near. Had he looked, or even glanced, toward the approaching engine, before attempting to cross the track, he would have instantly seen that it was too near, and was approaching at too great a speed, to permit him to cross the track in front of it in safety. It is not necessary, in order to establish a breach of the condition in the policy, to prove that deceased actually saw, or was conscious of, the nearness of the approaching engine. The danger was obvious, whether he was conscious of it or not. It was his imperative duty to stop and look before attempting to cross the track. The word *obvious*, as used in the contract of assurance, bears its common, or generally accepted, meaning, one of which, as defined by Webster, is, ''easily discovered, seen, or understood; readily perceived by the eye or the intellect; plain; evident; apparent.'' It is synonymous with the words *plain, clear* and *evident*. The risk was so manifestly dangerous that we are compelled to say, as matter of law, no ordinarily prudent person would have voluntarily assumed it.

In *Diddle* v. *Casualty Co..* 65 W. Va. 170, which was an

action to recover for the accidental death of the insured, on an accident insurance policy containing a condition almost identical with the one on which defendant here relies, it was held that: "Either reckless or deliberate encountering of known danger, or danger so obvious that a reasonably prudent man would have observed and avoided it, if the circumstances were not such as necessitated the encountering thereof, is a voluntary exposure within the meaning of a clause in an accident insurance policy, limiting the liability of the insurer in case of an injury resulting from 'voluntary exposure to unnecessary danger or obvious risk of injury.' " The danger which deceased encountered in the present case was even more obvious and the risk more hazardous than the one Diddle exposed himself to in that case.

In *Bassford, Adm'r. etc.* v. *Railway Co.,* 70 W. Va. 280, this court decided that: "It is negligence for a pedestrian at a crossing to step in front of an approaching train when the train is in full view and so near that no prudent man would undertake to cross."

If this action had been against the railroad company by deceased's representative for negligently causing his death, there can be no doubt that, in view of the undisputed facts as disclosed by the record, deceased's contributory negligence would preclude recovery. No prudent man would have undertaken to cross the track so close in front of a rapidly approaching engine. It may be that, at the time of the accident, deceased's mind was occupied with thoughts of other matters that he was oblivious to the approaching train and was, therefore, not conscious of the immediate danger of attempting to cross the track. If that be so it was his own misfortune, and the law does not excuse his negligence. It was his duty to exercise care in the presence of so great and imminent a danger, and his failure to do so was negligence. The danger to which deceased exposed himself was obvious, within the meaning of the condition of the policy pleaded, whether he was conscious of it at the time or not, and exonerates defendant from payment of any more than one-fifth of the amount for which it would otherwise have been liable. The demurrer to the evidence should have been sustained.

At the trial defendant tendered $500, the amount for which

it admitted liability, and plaintiff waived the payment of it into court. Whether this sum is actually in the custody of the court is not certain, but the jury evidently treated it as having been paid, for it returned an alternative verdict assessing plaintiff's damages at $2,000, in the event the court held the law to be with plaintiff, on the demurrer to the evidence, and found for the defendant, in the event the court found the law to be in its favor. The court rendered judgment for $2,000, and also ordered the $500 tendered to be "paid to the plaintiff or held by the general receiver of this court until the further order of the same." If the $500 is in the custody of the court, the judgment should have been for defendant, because its liability was fully discharged by payment of the $500. We, therefore, reverse the judgment and sustain the demurrer to evidence; and, it not appearing from the record whether the $500 for which defendant admitted its liability was actually paid into court, this court is not advised as to the judgment that should be rendered. The cause will therefore be remanded for the entry of such judgment by the circuit court as may be proper, consistent with the law of the case as herein determined. If defendant has kept its tender good, or has actually paid the $500 into court, plaintiff is not entitled to interest thereon after that date, neither can she recover costs in the lower court, accruing after the time tender was made in court. Defendant is, of course, entitled to its costs in this court.

*Reversed and Remanded.*