STELLA B. ROMMEL, Appellant, v. NATIONAL TRAVELERS BENEFIT ASSOCIATION, Appellee.

INSURANCE: "Obvious Risk of Danger." "Exposure to obvious
1  risk," within the meaning of a policy of insurance, is shown as a matter of law, under instant record, which deals with the act of the insured in attempting to cross, in a rowboat, a swollen and turbulent stream, for the purpose of reaching and destroying an ice gorge.

INSURANCE:   Dangers Incident to Occupation.   Concede, *arguendo*,
2    that a clause in a policy of insurance providing for limited
     liability in case of death from exposure to "obvious dangers"
     has no application to dangers attending the *official* duties of the
     insured, yet manifestly such concession becomes immaterial
     when, at the time of the exposure in question, the insured was
     performing a non-official act.

*Appeal from Mahaska District Court.*—HENRY SILWOLD,
Judge.

FEBRUARY 16, 1918.

REHEARING DENIED MAY 17, 1918.

ACTION upon a policy of insurance for $5,000 death bene-
fits.  The court directed the jury to return a verdict in favor
of the plaintiff for $100.  Plaintiff appeals.  The facts are
fully stated in the opinion.—*Affirmed.*

*Thomas J. Bray* and *J. G. Shifflett,* for appellant.

*Burrell & Devitt* and *Carr, Carr & Evans,* for appellee.

STEVENS, J.—I. Arthur E. Rommel, at the time of his
death, which occurred on the 26th day of February, 1916, by
drowning, held a certificate of membership in the National
Travelers Benefit Association, of Des Moines,
Iowa, by the terms of which the association
agreed, in case of death by accident, to pay
Stella B. Rommel, his wife, and plaintiff herein, the sum of
$5,000.  The policy, however, provided:

1. INSURANCE:
obvious risk
of danger.

"This policy shall not cover   *   *   *   injuries occa-
sioned by   *   *   *   exposure to obvious risk   *   *   *   to
an amount exceeding $100."

The circumstances surrounding his death are, in sub-
stance, as follows:

Mr. Rommel was county engineer of Mahaska County;
and, an ice gorge having formed in the Des Moines River
near Oskaloosa, causing the channel to become obstructed

and the flood waters to flow over the adjacent bottom land, he, with some companions, attempted to destroy the gorge by the use of dynamite. The river is described by some of the witnesses as having two channels, one a quarter of a mile in width, and another, between a knoll or elevation of land, referred to in the evidence as an island, and an ice gorge beyond. The latter channel was about 130 to 200 feet in width, but the distance from the island to the gorge, the way deceased and Thomas went, was about 300 feet.

On the day in question, deceased, with Mr. Ruggenberg, Mr. Reynolds, and Mr. Thomas as companions, rowed across the first channel to the island in two small boats, but only Rommel and Thomas attempted to cross the channel from the island to the ice gorge. They appear to have crossed the first channel to the island without serious difficulty. The witnesses described the channel between the island and the gorge as containing many trees and shrubs, and the water as flowing very swiftly. This is also indicated by the difficulty encountered by Thomas and the deceased in launching the boat for the trip. The other two men assisted them in getting into it; and an oar, placed in the water by Thomas for the purpose of holding the boat, was immediately carried to the surface by the swiftness of the stream. In crossing this channel, they abandoned their oars, and propelled the boat by taking hold of trees and forcing it with their feet. The same method was pursued in attempting to return to the island; but, when deceased took hold of a tree, one end of the boat tipped, and passed from under him. His companion, who testified that the water was not very swift at the point where this occurred, adjusted the boat, enabling Rommel to get into it, and they proceeded on their way toward the island. Deceased again took hold of a tree, causing one end of the boat to settle and again pass out from under him. Thomas then grabbed the same tree, and the boat passed from under them beyond their reach. Thomas ap-

parently had a secure hold on the tree; while deceased, for a time, held on to Thomas, the latter assisting him by holding onto his coat collar.

Ruggenberg and Reynolds, who remained on the island, observing their peril, went to the opposite site of the island for the other boat, which they dragged to the channel between the island and the gorge; but, on account of the swiftness of the water, were unable to launch the same or render any assistance to the parties. In the meantime, Rommel had loosed his hold upon Thomas, and drifted down stream to a point where his body was later found. Several hours later, a young man, who was an experienced boatman, rescued Thomas from the tree, and took him to the island, where the parties remained until the following morning, when they returned to the shore from which they started the day before. The young man who rescued Thomas brought with him some ropes, one of which he attached to the boat, and the same was held by the men on the island, while he crossed the channel to a point near where Thomas was, and threw a trot-line, attached to a rope, to him, who tied the end of the rope to the tree, and by the use thereof reached the boat. In returning, the oars were not used, and the party in charge of the boat pulled it ashore by holding to the rope, one end of which was fastened on the shore, and the other to the tree from which Thomas had been rescued. Reynolds and Ruggenberg both declined to cross the channel from the island to the gorge, evidently on account of the dangerous appearance thereof; and there was some evidence that Mr. Rommel stated, before going to the river, that it was a useless and dangerous undertaking to attempt to destroy the gorge by the use of dynamite; and one witness testified that he cautioned him against going, on account of the hazard involved. It is contended by counsel for appel-

2. INSURANCE:
dangers inci-
dent to occu-
pation.

lant:   (a) That deceased was, at the time he was drowned, engaged in the performance of his duties as county engineer, and that whatever risk was involved therein was incident thereto; (b) that the case presented a question of fact for the jury, and that the court erred in directing a verdict in favor of the plaintiff for $100.

Appellee, for defense, relies upon the provision of the policy above quoted. The evidence is conflicting as to some minor details, but not as to the more important facts involved. While the county engineer performs his duties under the direction of the board of supervisors, they are, nevertheless, prescribed by statute. The evidence does not show that, at the time in question, deceased was engaged in the performance of his duties as county engineer, or that he was acting under the direction or command of the board of supervisors. Whatever he did was voluntary on his part, but with the knowledge and apparent acquiescence of the board of supervisors. There was testimony tending to show that deceased was importuned by various persons affected by the flood to do something to relieve the situation, and that his efforts were inspired rather more by these importunities and the desire to be relieved therefrom than by the necessity of performing official duties. It is quite clear that the risk assumed by deceased was not incident to his office or occupation. Section 1527-s3, Supplemental Supplement, 1915, and following sections.

II. That the deceased entered upon a dangerous venture, when he and Thomas undertook to cross the channel between the island and the ice gorge, conclusively appears from the situation as described by the witnesses, and the unfortunate consequences that followed. This alone will not, however, prevent plaintiff's recovery. The risk assumed, to defeat recovery, must have been an obvious one. The exception contained in the policy is for "injuries occasioned

by exposure to obvious risk." The word "obvious," as used in this connection, must be given its common or generally accepted meaning, which, as given by Webster, is, "easily discovered, seen or understood; readily perceived by the eye or the intellect; plain, evident, apparent." *Combs v. Colonial Casualty Co.*, 73 W. Va. 473 (80 S. E. 779) ; *The Sikh*, (D. C.) 175 Fed. 869. In *Small v. Travelers Protective Assn.*, 118 Ga. 900 (45 S. E. 706), the court said:

"The words 'obvious risk' designate not only a risk which may be readily perceived by the eye or senses, but also one that may be perceived by the intellect." *Diddle v. Continental Casualty Co.*, 65 W. Va. 170 (63 S. E. 962).

This court, in *Correll v. National Accident Society*, 139 Iowa 36, defined an apparent danger as follows:

" 'An apparent danger' is one which is capable of being seen or otherwise comprehended through the medium of the senses. Webster's Dictionary; Century Dictionary. And to constitute a voluntary or unnecessary exposure, the danger must either have been known to the insured in fact, or one which, in the exercise of his faculties as an ordinarily prudent person, should in reason have been known to him."

And in *Jones v. United States Mut. Acc. Assn.*, 92 Iowa 652, 655, it is said that the acts of the injured must have been such as reasonable and ordinary prudence would pronounce dangerous. For the rule as stated in other jurisdictions, see *Small v. Travelers Protective Assn.*, supra; *Combs v. Colonial Casualty Co.*, supra; *National Life & Acc. Ins. Co. v. Lokey*, 166 Ala. 174 (52 So. 45) ; *Diddle v. Continental Casualty Co.*, supra; *Shevlin v. American Mut. Acc. Assn.*, 94 Wis. 180 (36 L. R. A. 52) ; *Garcelon v. Commercial Trav. Acc. Assn.*, 195 Mass. 531 (81 N. E. 201) ; *Rebman v. General Acc. Ins. Co.*, 217 Pa. 518 (66 Atl. 859) ; *Price v. Standard Life & Acc. Ins. Co.*, 92 Minn. 238 (99 N. W. 887).

The question, presented, therefore, is: Was the hazard or risk assumed by deceased obvious, or so apparent to a rea-

sonably prudent and cautious person that it can be said, as
a matter of law, that reasonable minds would not differ in
respect thereto? If the risk was so plain, apparent, and
obvious that it would have been readily perceived or ob-
served by an ordinarily prudent and cautious person, then
a verdict, if returned in favor of plaintiff for the full amount
in the policy, could not be permitted to stand. The burden
of proof to show that death resulted from exposure to obvi-
ous risk was on the defendant. It was shown by the evi-
dence that there was a small, false bank, apparently only a
few inches in height, a short distance above the point where
the accident occurred, over which the water was flowing
very swiftly, and that, when it reached the point where de-
ceased caught hold of the tree, its velocity was very great,
and was estimated by one of the witnesses as fifteen miles
per hour. Whether the judgment of this witness was ac-
curate or not, it is manifest, from the description of the
witnesses, and the difficulties encountered by deceased and
Thomas, that its velocity was great. Thomas remained in
the tree for several hours, and was not rescued until a young
man who was an experienced boatman arrived, with ropes
which were used in the rescue in the manner above described.
One of the witnesses testified that the delay was due rather
to the want of proper equipment than to the danger and dif-
ficulties of reaching Thomas; but after his rescue, the
parties remained on the island until morning, notwithstand-
ing that a crowd of sympathetic people had, in the meantime,
gathered on the shore. There was evidence tending to show
that deceased observed and appreciated the fact that the un-
dertaking was a dangerous one; and the board of supervisors
sought to employ another person to destroy the gorge, but
were unable, apparently, to do so. One witness testified
that thirty minutes were consumed by four men in crossing
the first channel, and that approximately the same length of
time was required for Thomas and Rommel to go from the

island to the gorge, a distance of approximately 300 feet. It was not necessary that the danger to deceased of losing his life should have been immediately apparent to him, or the exact situation fully known or appreciated by him; but, if same would have been obvious or apparent to a reasonably prudent and cautious person, then the risk assumed in attempting to cross from the island to the gorge and return was obvious, and death resulted, within the terms of the policy, from exposure to obvious risk.

We have made a careful examination of the evidence, and are convinced that deceased exposed himself to a hazard that must have been obvious and apparent to a reasonably prudent and cautious person; and that, upon this question, reasonable minds could not differ; and that, had a verdict been returned in favor of the plaintiff for the amount of the policy, it could not be permitted to stand.

It is also urged on behalf of appellant that deceased was an experienced boatman, and believed from his experience that there was no apparent hazard or danger in crossing either of the channels; but we are unable to agree with this contention. We think it apparent that there was obvious risk, and that, under the clause of the policy above quoted, the court did not err in directing a verdict for plaintiff for the smaller sum allowed by the policy.

The judgment of the lower court is, accordingly,— *Affirmed.*

PRESTON, C. J., LADD and GAYNOR, JJ., concur.