NOT RECOMMENDED FOR PUBLICATION
File Name: 15a0132n.06

No. 14-5232

# UNITED STATES COURTS OF APPEALS
## FOR THE SIXTH CIRCUIT

In re: BLACK DIAMOND MINING COMPANY,
LLC, et al.,

    Debtor.

-----------------------------------------------------------------

THE CIT GROUP/COMMERCIAL SERVICES, )
INC., )
                                )
    Appellant, )
                                  )
v. )
                                  )
CONSTELLATION ENERGY COMMODITIES )
GROUP, INC. and CONSTELLATION ENERGY )
GROUP, INC., )
                                  )
    Appellees.

FILED
Feb 13, 2015
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF KENTUCKY

**BEFORE:**    **NORRIS, ROGERS, and WHITE, Circuit Judges.**

    **ROGERS, Circuit Judge**. Constellation Energy Commodities Group ("Commodities") and Black Diamond Mining Company agreed to buy and sell coal to and from one another. The agreement allowed the parties to "net" offsetting obligations so as to avoid the hassle of making redundant payments. Shortly after Commodities and Black Diamond executed the agreement, Black Diamond assigned to The CIT Group its right to receive payments for coal it delivered to Commodities. When Black Diamond went bankrupt a few years later, Commodities had not paid CIT for roughly $10 million in coal Commodities had received. CIT demanded payment, but Commodities contended that, under the netting provision, it could offset the $10 million debt

against the roughly $90 million Black Diamond owed it, meaning Commodities did not have to pay CIT anything. CIT countered that Commodities could not rely on Black Diamond's debts as the basis for not paying CIT the $10 million.

This case boils down to whether Commodities' $10 million debt to CIT is subject to the netting provision. It is. Under New York law, which governs this dispute, an assignee stands in the shoes of its assignor and takes subject to those liabilities of its assignor that were in existence prior to the assignment. CIT, as Black Diamond's assignee, is not entitled to payment of the $10 million because, under the netting provision in place at the time of the assignment, Black Diamond itself would not have been entitled to payment of the $10 million.

In its order affirming the bankruptcy court's grant of summary judgment, the district court summarized the facts of this case as follows:

> In 2006, [Black Diamond] agreed to sell coal to [Commodities]. Shortly after executing its contract with Commodities, Black Diamond assigned its right to receive payments for the coal to [CIT]. So the basic scheme was simple: Black Diamond sold coal to Commodities, and Commodities paid CIT.
>
> Black Diamond and Commodities carried on their relationship through both written and unwritten contracts. Their written agreements each contained a so-called "netting" provision. That provision allowed the parties to "net" mutual debts to avoid redundant payments. So, if Black Diamond owed Commodities $200,000, and Commodities owed Black Diamond $100,000, then the contract required only a single $100,000 payment by Black Diamond. It is undisputed that the unwritten agreements included an identical netting provision.
>
> The wheels came off the wagon in early 2008. Black Diamond failed to fulfill its obligations to both Commodities and CIT, and CIT forced Black Diamond into bankruptcy. Black Diamond's bankruptcy constituted a breach of its agreements with Commodities. That breach forced Commodities to buy coal at much less favorable prices than those contemplated by its contracts with Black Diamond, resulting in damages of around $90,000,000.
>
> This suit arises from one of the last transactions that preceded Black Diamond's bankruptcy. In December 2007, Commodities purchased a shipment of coal from Black Diamond pursuant to an unwritten contract for roughly $10,000,000. Commodities never paid for the coal. The question presented here is whether Commodities may "net" that $10,000,000 against the $90,000,000 it lost as a result of Black Diamond's declaration of bankruptcy. If so, then

> Commodities owes CIT nothing, as it can simply subtract that $10,000,000 from the $90,000,000 it is owed. If not, then Commodities must pay CIT.

*The CIT Grp./Comm. Servs., Inc. v. Constellation Energy Commodities Grp., Inc. et al.*, No. 13-88-ART, 2014 WL 345413, at *1 (E.D. Ky. Jan. 30, 2014).

The bankruptcy court granted Commodities' motion for summary judgment, holding that Commodities could rely on the netting provision as a defense against payment of the $10 million. The district court affirmed, explaining that, "as a matter of logical necessity," CIT, as Black Diamond's assignee, could not take better rights to payment than Black Diamond had to give, and that since Black Diamond's right to payment from Commodities was subject to the netting provision, CIT's right to payment was similarly circumscribed. *Id.* at *2. CIT now appeals the district court's decision.

> Here is the full text of the netting provision:

> The Parties hereby agree that they shall discharge mutual debts and payment obligations due and owing to each other on the same date or in the same month in respect of this Agreement and any other transaction between the Parties in the same Commodity through netting. All amounts owed by each Party to the other Party, including any related liquidated damages, interest or other amounts, shall be netted so that only the net difference between such amounts shall be payable by the Party who owes the greater amount. Each party reserves to itself all rights, setoffs, counterclaims, combination of accounts, liens and other remedies and defenses which such Party has or may be entitled to (whether by operation of law or otherwise). All payment obligations hereunder and under any transaction between the Parties in the same Commodity may be offset against each other, set off or recouped.

BR doc. #1-2, at 16. The second sentence is of particular significance to this case. The phrase "All amounts owed by each Party to the other Party, including any related liquidated damages, interest or other amounts" undeniably encompasses both the $90 million Black Diamond owed Commodities and the $10 million Commodities owed Black Diamond's assignee, CIT. The second half of the sentence not only allows, but affirmatively requires that such debts "be netted so that only the net difference between such claims shall be payable by the Party who owes the

greater amount." There is no ambiguity about how netting works under the agreement: it applies to "All amounts owed" between the parties at all times. CIT appeared to concede as much below; its arguments were not addressed to the operation of the netting provision, but, rather, to whether the provision applies to CIT as the assignee. *The CIT Grp./Comm. Servs., Inc. v. Constellation Energy Commodities Grp., Inc. et al.*, No. 7:13-cv-88-ART, doc. # 22, PageID 247–49.

When CIT took assignment of Black Diamond's rights under the agreement, it did not take those rights free of the netting provision—although nothing kept it from negotiating such an agreement with Commodities. Instead, CIT simply stepped into Black Diamond's shoes as payee, its right to payments subject to all of the defenses that Commodities might have asserted against Black Diamond under the existing agreement, including the netting provision. That is so because, "It has always been the law in New York that an assignee stands in the shoes of its assignor and takes subject to those liabilities of its assignor that were in existence prior to the assignment." *Septembertide Pub., B.V. v. Stein & Day, Inc.*, 884 F.2d 675, 682 (2d Cir. 1989) (internal citation omitted). New York's Uniform Commercial Code codifies that very principle, providing that "the rights of an assignee are subject to . . . all terms of the agreement between the account debtor and the assignor." N.Y.U.C.C. § 9-404(a)(1). The upshot is that, where an account debtor could assert a defense against an assignor, it may generally assert that defense against an assignee. *See Riviera Fin. of Tex., Inc. v. Capgemini US, LLC*, 511 F. App'x 92, 94 (2d Cir. 2013) (citing *Gen. Elec. Credit Corp. v. Xerox Corp.*, 112 A.D.2d 30, 31 (N.Y. 4th Dep't 1985)). If it were otherwise, defenses like the one established by the netting provision would be worthless, since a contracting party could circumvent them by simply assigning its rights to a third party.

Of course, an assignee is not subject to setoff for every debt the assignor incurs. If, for instance, an assignor incurs a debt that bears no relationship to the right assigned, that debt does not diminish the assignee's rights under the assignment. But that is not the case here. The right Black Diamond assigned to CIT was expressly limited by the netting provision when it was assigned. The netting provision was built into the right assigned. It does not matter that it was only after the assignment that Black Diamond became a net debtor to Commodities, since, by its terms, the netting provision ensured that netting would apply not just to already-incurred debts, but also to future debts.

Under New York law, then, Commodities could assert the netting defense against CIT, Black Diamond's assignee, just as it could assert the defense against Black Diamond. CIT's attempts to muddy this straightforward conclusion are unavailing. CIT asserts, for example, that the netting provision is unenforceable because New York law requires that contractual provisions creating setoff rights more expansive than those established by common law or statute be drafted "with clarity and specificity." But no New York cases establish such a requirement—at least not beyond the requirement for clarity that applies to all contracts. *See Reinfemet Int'l Co. v. Eastbourne N.V.*, 25 F.3d 105, 108 (2d Cir. 1994) (citing *W.W.W. Assocs., Inc. v. Giancontieri*, 566 N.E.2d 639, 642 (N.Y. 1990)). Neither of the New York cases CIT cites in support of its position, *N. Am. Mortg. Investors, Inc. v. FAS*, No. 02-8789, 2004 WL 1885961 (S.D.N.Y. Aug. 23, 2004), or *Bank of New York v. Meridian BIAO Bank Tanzania Ltd.*, No. 95 CIV 4856, 1997 WL 53172 (S.D.N.Y. Feb. 10, 1997), requires a different conclusion. In *FAS*, for example, the issue was whether the meaning of an offset provision was sufficiently ambiguous as to preclude summary judgment. *N. Am. Mortg. Investors, Inc.*, 2004 WL 1885961, at *1. The scope of the provision at issue depended on whether one party's anticipation of possible liability on certain

claims was "reasonable." *Id.* at \*4. Because the meaning of "reasonable" in that context was not clear, the district court found that summary judgment was not appropriate. The netting provision here, by contrast, does not have any similarly ambiguous language, so that enforcing it requires only a straightforward reading of its terms. The challenged offset provision in *FAS* was further rendered ambiguous because the documents in the record in that case supported competing interpretations of its terms. *Id.* at \*3. Nothing in the record here, by contrast, creates any ambiguity in the netting provision. Given these material differences between the provision at issue in *FAS* and the netting provision, the holding in *FAS* is inapposite.

*Bank of New York* is even less helpful to CIT. In that case, the district court held that a setoff provision defining "obligations" to include all "present and future obligations and liabilities of whatever nature (whether matured or unmatured, absolute or contingent)" was enforceable. *Bank of New York*, 1997 WL 53172, at \*2. In its briefs and at oral argument, CIT painted *Bank of New York* as establishing the lower bound of the type of language that is sufficiently clear to merit enforcement of a setoff. Nothing in *Bank of New York* supports that reading. The *Bank of New York* court merely noted that the language at issue in that case was acceptably clear, not that a less explicit setoff provision would be *per se* unenforceable for failing to meet some undefined standard of clarity. *Bank of New York* does not support the rule that CIT attributes to it.

CIT also argues that the netting provision preserved only common-law setoff rights, but its argument is undermined by language in the netting provision. For one thing, the netting provision expressly reserves to the parties the right to setoff "by operation of law *or otherwise*." BR doc. #1-2, at 16. If, as CIT contends, the netting provision preserves only common-law setoff rights, the "or otherwise" language would be superfluous, a result disfavored by New York

law. *See Rhodes v. Newhall*, 126 N.Y. 574, 578 (N.Y. 1891). Furthermore, the netting provision expressly provides for netting of "All amounts owed by each Party to the other Party, including any related liquidated damages, interest or other amounts," and that "All payment obligations hereunder and under any transaction between the Parties in the same Commodity may be offset against each other, set off or recouped." BR doc. #1-2, at 16. Allowance of such broad netting rights goes beyond the narrower rights preserved by New York's common-law setoff rules. *See, e.g.*, *In re Westchester Structures, Inc.*, 181 B.R. 730, 740 (S.D.N.Y. 1995) (explaining some limitations on common-law setoff). It is entirely consistent, however, with the commonsense rule that "parties are free to create contractual setoff rights that differ from those provided by common law or statute." *In re Lehman Bros. Inc.*, 458 B.R. 134, 139 (S.D.N.Y. Bankr. 2011). The language of the netting provision makes clear that the parties intended to protect more than just common-law setoff rights.

Finally, CIT argues that Commodities should not be allowed to invoke the netting provision because Commodities allegedly breached the agreement before Black Diamond went into bankruptcy. Nothing in the agreement between Black Diamond and Commodities, however, prohibits a breaching party from invoking the netting provision. To be sure, there is language in the agreement establishing that, notwithstanding the netting provision, a "non-Defaulting party may withhold any payment otherwise owed to the Defaulting party hereunder, until . . . all amounts due and payable as of the Early Termination Date by the Defaulting Party . . . have been fully and finally paid." BR doc. #1-2, at 14. But that language expressly applies only where the "non-Defaulting party"—Black Diamond, in CIT's telling—has established an "Early Termination Date," and it is undisputed that Black Diamond never complied (or even tried to comply) with the agreement's procedures for establishing an Early Termination Date. Thus,

nothing in the language CIT cites bars Commodities from recovering—so far as it can—the debts that Black Diamond owes it, including by means of the netting provision.

Because Commodities is entitled to assert its rights under the netting provision against CIT, and because that decision suffices to decide this appeal in Commodities' favor, there is no need for us to address the other defenses Commodities raises. The judgment of the district court is **AFFIRMED**.