**REFINEMET INTERNATIONAL COMPANY, Plaintiff–Appellant,**

v.

**EASTBOURNE N.V., Defendant–Appellee.**

**No. 534, Docket 93–7283.**

United States Court of Appeals, Second Circuit.

Argued Nov. 18, 1993.

Decided May 25, 1994.

John F. Kurtz, Jr., Boise, ID (Hawley Troxell Ennis & Hawley, Boise, ID, Robert Owen, Owen & Davis, New York City, of counsel), for plaintiff-appellant.

Edward N. Meyer, New York City (Winston & Strawn, of counsel), for defendant-appellee.

Before: MAHONEY, McLAUGHLIN, and HEANEY,[*] Circuit Judges.

MAHONEY, Circuit Judge:

Plaintiff-appellant Refinemet International Company appeals from a judgment entered March 17, 1993 in the United States District Court for the Southern District of New York, John E. Sprizzo, *Judge*, that dismissed with prejudice its claims against defendant-appellee Eastbourne N.V. ("Eastbourne") for breach of contract following a bench trial.

We affirm.

## Background

On December 31, 1979, Ag–MET, Inc. ("Ag–MET") and its wholly-owned subsidiary R.I.C. Corp. entered into an agreement with Refinemet International Company ("Refinemet International") whereby Refinemet International was merged into R.I.C. Corp. On that same date, Eastbourne, which owned eighteen percent of Ag–MET's common stock and held a subordinated note convertible after March 31, 1980 into fifty percent of Ag–MET's common stock after conversion, entered into an Equity Contribution Agreement (the "Agreement") with Ag–MET. The Agreement required Eastbourne to indemnify Ag–MET for certain liabilities of Ag–MET and certain of its subsidiary corporations primarily related to environmental clean-up and litigation expenses arising out of events occurring prior to December 31, 1979 (the "Covered Claims") to the extent that the after-tax cost of the Covered Claims exceeded $200,000, so long as Ag–MET gave notice of the Covered Claims to Eastbourne by March 31, 1982.

Some time after the acquisition was completed, the merged Refinemet International–R.I.C. Corp. combination changed its name to R.M.I. Refinery and Ag–MET adopted the name Refinemet International Corporation ("Refinemet"). During March 1982, Refinemet sought and obtained from Eastbourne a letter agreement amending the Agreement to extend indefinitely the time during which Refinemet could submit notice of Covered Claims to Eastbourne.

Subsequently, in contemplation of a sale of Refinemet to Mandel Sherman, its president and chief executive officer, Eastbourne and Refinemet further amended the Agreement. Chase Manhattan Bank ("Chase"), the lead bank financing Sherman's purchase of Refinemet, sought assurances concerning the scope of coverage of the Agreement. To provide Chase with the necessary assurances, Refinemet and Eastbourne executed an amendment to the Agreement dated January 7, 1983 (the "Amendment"). The Amendment confirmed that the Agreement remained in force, transferred control over litigation of Covered Claims from Refinemet to Eastbourne, and required Refinemet to pay to Eastbourne the bulk of the proceeds (the "Proceeds") from the future sale of property located in Kearny, New Jersey and owned by Newtown Refining Corp. ("Newtown"), a wholly-owned Refinemet subsidiary.[1]

On May 11, 1984, as Refinemet's financial condition deteriorated, Refinemet caused Newtown to grant Chase a $40,000,000 first mortgage lien on the Kearny property. In late 1984, when Eastbourne discovered this

---

[*] The Honorable Gerald W. Heaney, United States Circuit Judge for the Eighth Circuit, sitting by designation.

1. The Amendment also provided for Eastbourne to receive certain of the proceeds from the future sale of a property owned by Newtown in Palmer, Massachusetts. No proceeds of any such sale, however, are at issue in this litigation.

mortgage, there was apparently some discussion that led Eastbourne to anticipate that Chase would waive its position and allow the Proceeds to be paid to Eastbourne upon the sale of the Kearny property. When the Kearney property was sold on March 5, 1985, however, Chase released its mortgage lien only to the extent of allowing a payment of approximately $100,000 to settle a lawsuit between Newtown and the New Jersey Department of Transportation.

Refinemet concedes in its main appeal brief that Eastbourne claimed that $95,172.50 was due to Eastbourne from the Proceeds of the Kearney sale. All of that money, however, was paid to Chase rather than Eastbourne. When Eastbourne learned that the Proceeds had been transferred to Chase, Eastbourne telexed Refinemet on March 7, 1985 asserting a breach of the Agreement. Refinemet responded in a telex dated March 15, 1985 that claimed the right to retain the Proceeds as an offset against amounts due from Eastbourne to Refinemet under the Agreement. Eastbourne then sent a telex to Refinemet on March 19, 1985 that concluded: "By reason of your breach, the [Agreement] has been terminated."

Refinemet commenced this action on December 2, 1988, invoking diversity jurisdiction and alleging breach of contract by Eastbourne. Judge Sprizzo conducted a bench trial, and concluded that: (1) Refinemet's failure to pay the Proceeds to Eastbourne constituted a material breach of the Agreement, terminating the Agreement and excusing Eastbourne from future performance under the Agreement; (2) the Amendment was not severable from the Agreement; (3) Refinemet had not substantially performed under the Agreement so as to require Eastbourne to perform despite Refinemet's failure to pay the Proceeds to Eastbourne; and (4) Eastbourne had satisfied all of its pretermination obligations under the Agreement. *See Refinemet Int'l Co. v. Eastbourne, N.V.,* 815 F.Supp. 738 (S.D.N.Y.1993) (opinion and order supporting judgment).

This appeal followed.

## Discussion

On appeal, Refinemet again advances all the contentions that were addressed by the district court. We reject those arguments substantially for the reasons stated in the thorough opinion of the district court. *See id.*

In addition, Refinemet asserts a right of offset (setoff or recoupment) as the basis for failing to turn the Proceeds over to Eastbourne. It argues that because Eastbourne owed Refinemet an amount under the Agreement that exceeded the Proceeds, Refinemet's failure to turn over the Proceeds to Eastbourne did not constitute a breach of the Agreement. Refinemet also contends that the Agreement is an aleatory contract which accordingly was not terminable upon Refinemet's failure to pay the Proceeds to Eastbourne. We write only to address these contentions, which were not considered in the district court's opinion.

### A. *Claimed Right of Offset.*

Although the district court's opinion did not specifically address this issue, Judge Sprizzo stated at trial that: "If you wanted the right to make offsets, it should be in your contract. It is not. I can't make a new contract for you other than the one you have made, which is what you want me to do." This statement responded to Refinemet's consistent claim, commencing with its initial response to Eastbourne's complaint concerning the failure to pay the Proceeds to Eastbourne, that it was entitled to retain the Proceeds as an offset to sums due from Eastbourne to Refinemet pursuant to the Agreement.

As a factual matter, Refinemet's claim to an offset is undermined by the district court's ruling, which we affirm, that Refinemet did not carry its burden of proving that any pretermination amounts were due, but not paid, to Refinemet from Eastbourne under the Agreement. Further, the Agreement would not provide a right to offset under New York law[2] in any event.

2. Paragraph 5(e) of the Agreement states that the "Agreement shall be governed by and construed in accordance with the internal laws of the State of New York."

108

Citing *Keon v. Saxton & Co.*, 257 N.Y. 412, 178 N.E. 679 (1931); *Merry Realty Co. v. Shamokin & Hollis Real Estate Co.*, 186 A.D. 538, 174 N.Y.S. 627 (2d Dep't 1919), *rev'd on another ground*, 230 N.Y. 316, 130 N.E. 306 (1921); and *United States v. Frank*, 207 F.Supp. 216 (S.D.N.Y.1962), Refinemet contends that New York law does not require a contract to "expressly provide for an offset as a prerequisite to exercising rights of setoff or recoupment." Eastbourne counters by citing *Gillman v. O'Connell*, 176 A.D.2d 305, 574 N.Y.S.2d 573 (2d Dep't 1991) (per curiam); *In re Claim of Webley*, 133 A.D.2d 885, 520 N.Y.S.2d 78 (3d Dep't.1987); and *Medco Group Inc. v. Woodbar Corp.*, No. 86 Civ. 4188 (MGC), 1987 WL 14121 (S.D.N.Y. Sept. 15, 1987), in arguing that in the absence of an offset provision in the Agreement, no such right should be implied.

■ There is no need to determine whether New York contract law includes a default rule that permits a right to offset in the absence of explicit contractual reservation of such a right. The terms of the Agreement make any such rule, if it exists, inapplicable to the case at bar. It is not, and could not plausibly be, contended that New York law provides a default rule that prevails over an explicit contractual provision that bars offset.

The Amendment added to the Agreement a paragraph six which states that: "Anything to the contrary herein notwithstanding, [Refinemet] shall promptly pay or cause to be paid to [Eastbourne]" the Proceeds. As the New York Court of Appeals has stated: "A familiar and eminently sensible proposition of law is that, when parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms." *W.W.W. Assocs., Inc. v. Giancontieri*, 77 N.Y.2d 157, 162, 566 N.E.2d 639, 642, 565 N.Y.S.2d 440, 443 (1990); *see also American Express Bank, Ltd. v. Uniroyal, Inc.*, 164 A.D.2d 275, 277, 562 N.Y.S.2d 613, 614 (1st Dep't.1990); *Mazzola v. County of Suffolk*, 143 A.D.2d 734, 735, 533 N.Y.S.2d 297, 297 (2d Dep't. 1988) (per curiam); *Tucker Leasing Capital Corp. v. Marin Medical Management, Inc.*, 833 F.Supp. 948, 956 (E.D.N.Y.1993) (construing New York law). The plain meaning of the language quoted from paragraph six of the Agreement is that regardless of any other term in the Agreement (including terms creating Eastbourne's liability for Covered Claims), Refinemet must pay the Proceeds (or cause them to be paid) to Eastbourne.

Refinemet argues that this language "could only be referencing 'contrary' express terms in the [Agreement]," presumably as contrasted to some right of setoff or recoupment based more broadly in New York law. Refinemet's right to reimbursement of Covered Claims by Eastbourne derives exclusively, however, from the Agreement. Thus, because paragraph six of the Agreement bars the assertion of any provision of the Agreement to impede the payment of the Proceeds to Eastbourne, there is no basis for Refinemet's contention that it was entitled to exercise recoupment or setoff with respect to the Proceeds.

B. *Aleatory Contract.*

■ Refinemet argues that the Agreement is in the nature of an aleatory insurance contract, and accordingly that its failure to pay the Proceeds to Eastbourne is akin to a failure to pay an insurance premium and does not excuse Eastbourne's obligation to reimburse Refinemet with respect to Covered Claims. We are unpersuaded.

"An aleatory promise is conditioned on the happening of a fortuitous event, or an event supposed by the parties to be fortuitous." John D. Calamari and Joseph M. Perillo, *The Law of Contracts* § 4–12, at 233 (3d ed. 1987) (citing *Restatement of Contracts* § 291). The Agreement, however, requires reimbursement for the payment of claims based upon events that antedated the 1979 merger of Refinemet International into R.I.C. Corp. The relevant uncertainties in this situation thus concern the magnitude of the claims that might be asserted against Refinemet based upon events that the parties knew had already taken place. In other words, the Agreement was intended to allocate responsibility for undisclosed and unspecified liabilities then existing, and was not intended to provide Refinemet with "insurance" coverage for liabilities arising from future fortuitous events.

■ Moreover, the authorities cited by Refinemet would not warrant the relief that it seeks even if the Agreement were construed as an aleatory contract. The *Restatement (Second) of Contracts* § 379 (1979) states only that a promisor under an aleatory contract "cannot treat his remaining duties to render performance as discharged on the ground of the other party's breach by non-performance if he does not manifest to the other party his intention to do so before any adverse change in the situation of the injured party." In this case, upon learning that the proceeds had been diverted to Chase, Eastbourne immediately informed Refinemet that it considered the Agreement to have been breached and thereby terminated. *Southern Surety Co. v. MacMillan Co.*, 58 F.2d 541 (10th Cir.), *cert. denied,* 287 U.S. 617, 53 S.Ct. 18, 77 L.Ed. 536 (1932), involved a failure to provide a contractually required notice to a surety, rather than to make a required payment, and "[t]he trial court found no prejudice resulting from the failure to give notice." *Id.* at 550. In this case, by contrast, Eastbourne was certainly prejudiced by the diversion of the Proceeds to Chase.

### Conclusion

The judgment of the district court is affirmed.