101 F.3d 684
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
MAJOR OLDSMOBILE, INC., Plaintiff-Appellant,
v.
GENERAL MOTORS CORPORATION, Defendant-Appellee.
 No. 95-7595.
 United States Court of Appeals, Second Circuit.
 May 17, 1996.
 
 1
 APPEARING FOR APPELLANT: Martin G. Margolis, Margolis, Meshulam & Pobereskin, P.C., Verona, NJ.
 
 
 2
 APPEARING FOR APPELLEE: Mary Elizabeth McGarry, Simpson Thacher & Bartlett, New York, NY.
 
 
 3
 S.D.N.Y.
 
 
 4
 AFFIRMED.
 
 
 5
 Present: MESKILL, MINER, Circuit Judges, SCULLIN, JR.,* District Judge.
 
 
 6
 This cause came on to be heard on the transcript of record and was argued by counsel.
 
 
 7
 Plaintiff-appellant Major Oldsmobile, Inc. ("Major") appeals from a judgment entered in the United States District Court for the Southern District of New York (Buchwald, then-Chief Magistrate Judge) granting summary judgment in favor of defendant-appellee General Motors Corporation ("General Motors").
 
 
 8
 On January 28, 1991, Major entered into a Dealer Sales and Service Agreement (the "Dealer Agreement") with General Motors. Under Article 4.2 of the Dealer Agreement, Major was "responsible for effectively selling, servicing and otherwise representing [Oldsmobile] Division's Products." Major was required under the Dealer Agreement to conduct its sales operations at 56-02 Northern Boulevard, Woodside, New York (the "Paragon Property"). Major, however, failed to exercise its option to extend its lease on the Paragon Property. In September of 1991, without the permission of General Motors, Major relocated its Oldsmobile sales operations to property at 44-01 Northern Boulevard, Long Island City, New York (the "Hinsch Property"). The showroom at the Hinsch Property consisted of a canvas tent in which the automobiles were displayed.
 
 
 9
 In a letter dated November 14, 1991, General Motors warned Major that its relocation of its sales operations without prior written approval was a breach of Article 13.1 of the Dealer Agreement. On November 26, 1991, Major submitted a proposal for the construction of a new Oldsmobile sales facility at the Hinsch Property and requested approval for relocation to that property. On July 1, 1992, General Motors approved Major's proposal.
 
 
 10
 Meanwhile, Major had engaged in discussions with Chrysler Corporation ("Chrysler") to operate a Chrysler/plymouth/jeep/ Eagle dealership at the Hinsch Property. On October 23, 1992, pursuant to an Assignment of Lease, the Hinsch Property was subleased to Major Chrysler Plymouth/Jeep Eagle, Inc. Having learned of Major's intentions, General Motors began observing Major's operations at the Hinsch Property. General Motors employees observed that, between October 30, 1992 and November 10, 1992, "[t]here was no sales operation with regards to facility, manpower and display" at the Hinsch Property. On November 16, 1992, General Motors sent Major a Notice of Termination, stating that the Dealer Agreement would be terminated fifteen days after Major received the Notice. The Notice was issued pursuant to Article 14.5.3 and recited that termination was due to Major's failure to conduct customary sales operations for seven consecutive business days.
 
 
 11
 On January 13, 1994, Major filed an amended complaint in the district court, alleging that General Motors' termination of the Dealer Agreement breached the Agreement and violated New York law. Major sought declaratory and injunctive relief, as well as monetary damages. After conducting discovery, both parties moved for summary judgment in December of 1994. In a Memorandum and Order dated May 30, 1995, the district court granted summary judgment in favor of General Motors. The district court found that General Motors' termination of the Dealer Agreement was proper under both the Agreement and New York law. This appeal followed.
 
 
 12
 In our review of a grant of summary judgment, "we apply the same standard as the district court did in deciding the Rule 56 motion and determine de novo whether a genuine issue as to any material fact exists, and if the moving party is entitled to judgment on the merits." Taggart v. Time, Inc., 924 F.2d 43, 45-46 (2d Cir.1991). "Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted." Id. at 46.
 
 
 13
 Major contends that the district court erred in granting summary judgment in favor of General Motors because "there exists genuine issues of material fact as to whether [Major] failed to conduct 'customary' sales activities for seven (7) consecutive business days." We disagree. Under Article 14.5.3 of the Dealer Agreement, General Motors could terminate the Dealer Agreement due to the "[f]ailure of [Major] to conduct customary sales and service operations during customary business hours for seven consecutive business days." New York law also provides that a franchisor may terminate a dealer agreement due to "the failure of the franchised motor vehicle dealer to conduct its customary sales and service operations for a continuous period of seven business days." N.Y. Veh. & Traf. Law § 463(2)(d)(2).
 
 
 14
 Although Major contends that the term "customary sales and service operations" is ambiguous, we agree with the district court that Major cannot be said to have conducted customary sales operations when there was a cessation of sales activities. General Motors offered evidence that "[t]here was no sales operation with regards to facility, manpower and display" between October 30, 1992 and November 10, 1992 at the Hinsch Property. Major has failed to present evidence that there were customary sales operations during this period of time. Although Major points to evidence of a vehicle "swap" with another dealer, deliveries of Oldsmobiles that previously had been sold, and newspaper advertisements for all the Major dealerships, this is insufficient to show the existence of customary sales operations involving Oldsmobiles at the Hinsch Property.
 
 
 15
 Major, however, argues that, even if it failed to conduct customary sales operations, this breach was caused by General Motors' failure to perform its own contractual obligations. This contention is meritless. Because Major did not raise this argument before the district court, it may not raise the argument on appeal. See Aslanidis v. United States Lines, Inc., 7 F.3d 1067, 1077 (2d Cir.1993) ("[A] party opposing summary disposition of a case must raise all arguments against such remedy in the trial court and may not raise them for the first time on appeal."). In any event, Major fails to point to any provisions of the Dealer Agreement that General Motors failed to fulfill.
 
 
 16
 Major also argues that the Notice of Termination was invalid because it did not specify all of General Motors' reasons for terminating the Dealer Agreement. We disagree. Major did not raise this argument before the district court, and thus Major is barred from raising it on appeal. See id. In any event, General Motors specified in the Notice of Termination that it was terminating the Dealer Agreement due to Major's "failure to conduct customary sales operations in violation of [the] Dealer Agreement." Although Major asserts that the Notice of Termination was inadequate because it did not set forth other ways in which it breached the Dealer Agreement, General Motors was not required to specify every conceivable breach by Major.
 
 
 17
 Finally, we reject Major's contention that General Motors was precluded from terminating the Dealer Agreement because it had "wrongful" motives for the termination. Major asserts that General Motors terminated the Dealer Agreement in order to award an Oldsmobile franchise to a General Motors-owned "factory store." However, even if there were such ulterior motives on the part of General Motors, these motives would not have affected its right to terminate the Dealer Agreement. As long as a party has "the legal right to terminate its obligation under the contract, it is legally irrelevant whether [the party] was also motivated by reasons which would not themselves constitute valid grounds for termination of the contract." Refinemet Int'l Co. v. Eastbourne N.V., 815 F.Supp. 738, 742 (S.D.N.Y.1993), aff'd, 25 F.3d 105 (2d Cir.1994).
 
 
 18
 We have considered Major's remaining contentions, and we find them all to be without merit.
 
 
 
 *
 The Honorable Frederick J. Scullin, Jr. of the United States District Court for the Northern District of New York, sitting by designation